Doe on the Demise of Stauffer and Another *v.* Stephenson.

The only legal evidence of the selections of lands donated to the state by the act of congress of *March* 2d, 1827, for the construction of the *Wabash* and *Erie* canal, is a properly certified copy thereof from the office of the secretary of the treasury of the *United States*.

APPEAL from the *Kosciusko* Circuit Court.

Blackford, J.—Ejectment, commenced in 1845, for a quarter section of land in *Kosciusko* county. Plea, not guilty. The cause was submitted to the Court, and judgment rendered for the defendant.

The decision of this cause depends on the weight of evidence.

The plaintiff introduced the following instrument of writing: "A list of canal lands situated in the county of *Kosciusko, Indiana*, as taken from the tract book of lands, selected for the construction of the *Wabash* and *Erie* canal west of *Tippecanoe*, in the auditor of state's office." Here follows a list of lands. This list, the auditor certifies, contains a correct description of all the lands donated by the general government to the state of *Indiana* for the continuance of the *Wabash* and *Erie* canal from

the mouth of the *Tippecanoe* river to *Terre Haute* as the same appears by the books of his office. This certificate is dated *January* 8, 1844. There is also, on said instrument, another certificate of the auditor, dated the 2d of *March*, 1844, which states that the lands described in said list belong to the state of *Indiana;* and that the list contains a correct description of the lands as described by the general government, and donated to the state of *Indiana* for the construction of the *Wabash* and *Erie* canal, as the same appears of record in his office. There is no seal of any kind attached to either of these certificates.

The quarter section of land now sued for is one of the tracts described in said list certified by the auditor.

The plaintiff also proved that, on the 15th of *November*, 1843, *Jacob Stauffer*, one of the lessors, and *George Milburn*, purchased said quarter section of land from the canal commissioner of this state; and that *Milburn* subsequently sold his interest in the land to *John Stauffer*, the other lessor.

The defendant produced a certificate, from the receiver of the *United States'* land office, of his purchase of said quarter section of land from the *United States*, on the 9th of *October*, 1841.

The above is all the evidence in the cause. The land in dispute originally belonged to the *United States;* and the only question in the cause is, had the *United States* transferred the land to the state of *Indiana*, before the 9th of *October*, 1841, when they sold it to the defendant?

The plaintiff says that said quarter section of land was, among other tracts, selected for the state under the act of congress of 1827, to aid the state in opening the *Wabash* and *Erie* canal; and that the selections of land so made were confirmed by an act of congress of *February*, 1841, which confirmation was about eight months before the defendant's purchase.

The act of congress of 1841 is as follows: Be it enacted "that there be, and there hereby is, confirmed to the state of *Indiana*, the land selected by her, under the provisions of the act of 2d of *March*, 1827, entitled 'An

act to grant a certain quantity of land to the state of *Indiana*, for the purpose of aiding the state in opening a canal to connect the waters of the *Wabash* with those of lake *Erie;* for that portion of the canal between the mouth of the *Tippecanoe* river and *Terre Haute, as returned by said state to the secretary of the treasury.' "*—Laws of congress, p. 414.

The plaintiff was bound to prove that the land he claimed was one of the selections thus confirmed. The land selected by the state, and confirmed to her by the act of congress are not described in the act itself, but they are referred to in the act by the words "as returned by said state to the secretary of the treasury." We infer, from that reference, that the list of the selections confirmed was deposited, and was to remain, in the office of the secretary of the treasury of the *United States;* and it must be presumed, till the contrary appears, that that list is still in that office.

The plaintiff relies on the 306th section of chapter 40, R. S. 1843, to show that the auditor's certificate was sufficient evidence. That section enacts, that "exemplifications or copies of records of deeds or other instruments, or of office books or parts thereof, and official bonds, which are or may be kept in any public office in this state, not appertaining to any Court, shall be proved or admitted as legal evidence in any Court or office in this state, by the attestation of the keeper," &c., "and the seal of office of said keeper thereto annexed, if there be a seal, or if there be no official seal, then such keeper may affix his ink scrawl to the attestation, to which last mentioned attestation shall be attached the certificate of the clerk and the seal of the Circuit Court," &c. (See, also, R. S. 1838, p. 274.) That section does not aid the plaintiff. It applies only to copies of such records, &c., as are authorized by law to be kept in the office from which the certificate is furnished. In the case before us, as we have already observed, the original list of the selections of land confirmed by congress must be considered, till the contrary appears, to be in the office of the secretary of the treasury of the *United States.* Besides, neither of the cer-

tificates of the auditor has any seal or scrawl attached to it.

The plaintiff also relies on the statement of the auditor, in the second certificate, that the lands mentioned in the list certified by him were then owned by the state. An act of the state legislature is cited to show, that such statement of the auditor is sufficient evidence of title in the state. That act says, "that whenever in any suit, &c., in any Court in this state, it shall be necessary to prove title in the state to any lands or lots whatever, the certificate of the auditor of state, describing such lands or lots, and certifying that the same belong to the state of *Indiana*, shall be deemed and taken by such Court as sufficient evidence of the right and title of the state thereto; and unless the same shall be proved to be the property of, and belong to, some other person or persons, shall be conclusive evidence of the full title and right of the state thereto, and to the possession thereof." Acts of 1844, p. 110. This statute expressly excepts from the conclusive effect of the auditor's statement, cases in which the land shall be proved to be the property of another. In the present case, the statement of the auditor may, by virtue of the statute, be considered as *prima facie* evidence of title in the state. The land office certificate was, by statute, evidence that the legal title to the land was in the defendant. R. S. 1838, p. 458; R. S. 1843, p. 455. We think that the defendant's land office certificate should prevail over the unsupported statement of the auditor that the state was the owner of the land.

The plaintiff wishes to show what were the selections of land embraced by the act of congress of 1841. The only legal evidence of those selections is, we conceive, a properly certified copy of the list thereof furnished from the office of the secretary of the treasury of the United States, if the original is still there. If the original is not there, then, upon proof of that fact, other evidence on the subject than a copy from that office will be admissible.

*Per Curiam.*—The judgment is affirmed with costs, &c.

*J. B. Niles* and *A. L. Osborn*, for the plaintiffs.

*J. W. Chapman*, for the defendant.