THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY
v. AMOS NOYES.

1. TITLE *of Railway Company to Lands, When Fixed.* Under the act of
congress of July 26th, 1866, granting lands to the state of Kansas to
aid in the construction of the southern branch of the Union Pacific rail-
way and telegraph, from Fort Riley, Kansas, to Fort Smith, Arkansas,
when the line of the railroad was definitely located, the title of the rail-
way company to the odd sections within the ten-mile limit became, *ipso
facto*, fixed and absolute. With respect to the land in the indemnity ter-
ritory, commonly called "lieu lands," the right of the company was
only a float, and attached to no specific tracts until the selection was
actually made in the manner prescribed by the act.

2. HOMESTEAD TITLE, *Paramount to Patent Title of Railway Company.*
Where N., having the qualifications therefor, made a homestead entry
for eighty acres of public land, and within the indemnity territory, from
which the deficiency in the ten-mile limit was to be supplied to the
railway company, under the act of July 26th, 1866, prior to any with-
drawal of the lands from market or entry, and before such tract had
been selected to help satisfy any deficiency, and afterward, and while
N. was in possession of the land under such entry, and after he had
complied with all the provisions of the homestead act, the secretary of
the interior selected the tract to supply a deficiency in the odd section
of land in the ten-mile limit, and the railway company, upon such
selection, obtained a patent from the United States therefor, *held*, that
the selection and the issuance of the patent were without authority of
the statute, as N. had, under his homestead entry and compliance with
the provisions of the homestead law, the paramount right to the land.

*Error from Chase District Court.*

ACTION by *Noyes* against *The Missouri, Kansas & Texas
Railway Company*, to quiet his title to certain land in Chase
county. The petition, omitting court and parties, is as fol-
lows:

"1st. And now comes plaintiff, by his attorney S. N. Wood,
and says, that the defendant is a corporation, incorporated
under the incorporation laws of the state of Kansas.

"2d. That plaintiff is a citizen of the United States, over
the age of twenty-one, and the head of a family, and has
been for eight years last past.

"3d. That, in February, 1867, plaintiff entered, under the

laws of the United States, to wit, the acts of congress approved May 20, 1862, and March 21, 1864, entitled "An act to secure homesteads to actual settlers on the public domain," at the land office at Junction City, Kansas, the east half of the southeast quarter of section eighteen (18), township eighteen (18), of range eight (8), east, in Chase county, and paid $10 and the office fees; and that at the time he was residing upon said land with his family, and has continued to reside upon said land and cultivate it ever since.

•"4th. That, on the 24th day of March, 1873, being over five years and under seven years after he had entered said land, he submitted his final proof and paid the last fees, and obtained his final certificate No. 575, and passed-upon application No. 1806; and that plaintiff complied with the law in every particular.

"5th. That, since the 24th day of March, 1873, the honorable secretary of the interior, without any authority of law, selected said land for the use and benefit of the Missouri, Kansas & Texas railway company, without the authority of law for the same.

"Wherefore plaintiff prays that he may be quieted in his title to said land, and that the defendant herein be forever barred as to all right, title or interest in said land, with costs of suit."

The defendant filed an answer, setting up various defenses. The action was tried at the May Term, 1878, of the district court, without a jury, upon the following agreed statement of facts:

"It is hereby stipulated and agreed by and between the plaintiff and defendant above named, that, subject to all legal objections to the sufficiency of the petition filed in said cause now here made by the defendant as constituting no cause of action against it, and the like objection against the answer now here made by the plaintiff for like reasons, the following are the facts in said cause subject to such objections as may be made by either party to said action and exceptions to be preserved to the rulings thereon.

"1st. That all the allegations of fact in said petition set out are true, except the fifth paragraph or subdivision thereof, and any legal conclusion or allegation of law in said petition contained.

"2d. That the homestead entry of the plaintiff as alleged in his petition was on the 22d day of July, 1873, canceled by

the order and decision of the secretary of the department of the interior of the United States.

"3d. That the land described in said petition is situated more than twelve miles from the line of the defendant's railway, and within twenty miles' limit therefrom, and within the indemnity limits provided by the grant of lands to defendant as alleged in the answer of the defendant in this action.

"4th. That parallel to the said land the defendant's line of definite location was made and established on the 29th day ôf September, 1866, and a map thereof was filed in the office of the secretary of the interior, December 3d, 1866.

"5th. That on the 1st day of April, 1867, the honorable the secretary of the department of the interior of the United States ordered the withdrawal of the said land, among others, from market and homestead entry.

"6th. That the allegations of the answer of the defendant, excepting the allegations of general denial, are true, excepting conclusions of law in said answer contained.

"7. That one Asa Hull set up a claim to and made homestead entry of the east half of the southeast quarter of section eighteen, in township eighteen, of range eight, east, the same being the land described in the plaintiff's petition.

"That such homestead entry was made January 5, 1863, and afterward, to wit, on the 26th of January, 1867, the said homestead entry was canceled by the order of the secretary of the department of the interior. This claim of Asa Hull, and homestead entry, and all proceedings thereunder, are objected to by defendant for the reason that the same are irrelevant and immaterial.

"8. That on January 5, 1876, the said land was patented by the United States to the defendant in accordance with selection theretofore made by the defendant, to wit, on the 3d day of September, 1875, which selection was on December 22, 1875, approved by the secretary of the interior.

"9. That plaintiff complied with all the provisions of the homestead law with reference to securing said land to himself.

"The conclusions of law to be made by the court from the above agreed statement of facts are to be reduced to writing, and the decision and judgment of the court made thereon and such conclusions of law and judgment to be excepted to by the party prejudiced thereby and noted by the court.

"This stipulation to be filed by the clerk of said court with

the record in this cause, and to be referred to by either party
hereto."

The case was taken under advisement till February 8,
1879, when the court rendered its decision that at the com-
mencement of the action the plaintiff was the owner and in
possession of the land; that the defendant had no interest
therein, and that the title executed by the secretary of the
interior to the land was void. Judgment having been ren-
dered barring the M. K. & T. Rly. Co. from · setting up any
title to the land, and adjudging it to pay all costs, it excepted,
and has brought the case here.

*D. Kelso,* for plaintiff in error:

1. The admitted fact that Hull had entered this land, Jan-
uary 5, 1863, which entry was afterward canceled by order of
the secretary of the interior, does not help the defendant in
error. The secretary having annulled this entry, the pre-
sumption is that his decision was founded on good and suf-
ficient grounds in law; and so far as Noyes is concerned, this
decision is conclusive as to him. The entry of Hull being a
nullity, and the land in question being public land, and the
line of the company's road being definitely fixed on Septem-
ber 29, 1866, and opposite to it, prior to the entry of Noyes,
and the map thereof being filed with the secretary of the in-
terior, December 3, 1866, it follows that from this time the
grant covered by the act of congress of July 26, 1866, attached
to the lands on each side of such line, and that in the month
of February, 1867 — the date of the alleged entry of Noyes
— the land was not subject to homestead entry. ( 23 Kas. 167,
174.)

2. The pretended entry by the defendant in error of the
land in question, in February, 1867, was also canceled by
order of the secretary of the interior, for the evident reason
that the land was not then subject to homestead entry — it
having before that time inured to the benefit of the railway
company. But the defendant in error insisted in the trial
court, and will now insist, that because the secretary of the

interior had not withdrawn the land from market, and homestead and preëmption entry, in February, 1867, it was not embraced in the lands inuring to the benefit of the railway company, at the time of its definite location, and that it was then subject to his homestead claim, and the secretary's decision, as against him, is a mistake of law.

Our answer to this is, that the railway company's title to the land is derived from the act of congress granting it, and is not subject to be defeated by the *laches* of a government officer in failing to discharge a duty enjoined on him by law. The language of the act is: "There is hereby granted," etc. It took effect when the line of the route of the railway company was definitely located, and, *eo instanti,* vested title in the company to the lands granted on each side of its road. (24 Kas. 673.)

As soon as the maps of such line were filed with the secretary, the law made it his duty to withdraw the lands granted by the act. How? "In such manner as may be best calculated to effect the purposes of this act and subserve the public interest." The act nowhere provides that, should the secretary fail to perform this duty, that the grant of land intended to be conveyed thereby should be inoperative and revert to the government. (Act of July 26, 1866, § 2.)

The claim of Hull to the land having been canceled, and he having abandoned it, the land was, at the time of the definite location of the railway, September 29, 1866, or when the maps thereof were filed in the office of the secretary of the interior, December 3, 1866, public land, and the grant to the railway company then attached. (24 Kas. 732.)

In deciding the claim of Noyes to this land adversely to him, the secretary of the interior simply followed the rule of the department as laid down in *Boyd v. The B. & M. Rld.,* (Copp's Land Laws, 392.)

*S. N. Wood,* and *C. M. Foster,* for defendant in error:

On the facts agreed upon, it is clear that a homestead right in favor of Hull had attached to the land in controversy, and

hence it was not included within the terms of the grant.   The decision in the case of *Boyd v. The B. & M. Rld.*, (Copp's Land Laws, 392,) holds that, when a homestead right attached to land at the time of the grant, that in case of an abandonment of the homestead, the land reverted to the government, and not to the said railroad company.   This decision was afterward limited so as to hold that there must be a valid subsisting homestead right at the time the land grant took effect, in order to exempt the land from its operation.   Under the agreed statement of facts, it must be assumed that Hull's homestead entry was valid and in full force on the 3d of December, 1866, and hence not included in the grant.

But we claim further, that this land was never included within the land grant.   The act of congress under which the plaintiff in error claims, unlike other land grants, provides that the secretary of the interior shall withdraw the land granted by the act from market as soon as the company shall file with him maps of its line, designating the route thereof. This we understand to mean the land within the ten-mile limit. ,The act further provides that in case it shall appear after the line of said road is definitely located that any section or part thereof has been sold by the United States, or that the right of homestead or preëmption has attached to the same, that the secretary of the interior shall cause an equal amount of land to be selected nearest to such sections, and that such land shall be reserved and held for the use of the company by the secretary of the interior.   This language does not give to the railway company any vested rights in land outside the ten-mile limit, until the same is selected by the secretary of the interior.   The grant of congress does not attach to the land until the selection.   Now in this case the selection of land was not made until eight and a half years after the plaintiff's homestead entry, and long after he had made his final payment and proof.

On this proposition there does not seem to be any question to be settled; it is in fact not an open question. (*Ryan v. Rld. Co.*, 99 U. S. 386.)

Plaintiff in error claims that it has title to this land, because it was the duty of the secretary of the interior to withdraw the land as soon as he received maps of the company's route. Very likely the railway company could have compelled, by mandamus, the secretary of the interior to withdraw the land or make the selection. But this was not done. We claim that the grant attached only after a selection of land had been made by the secretary of the interior, which could not be done until it was first ascertained what the deficiency was. The cases cited by counsel for plaintiff in error pass only on the question as to the time when the respective rights of the railway company and homesteads attach, and have no bearing on the questions in this case.

The opinion of the court was delivered by

HORTON, C. J.: It is disclosed by the record that Noyes, possessing all the legal qualifications to enter and homestead a portion of the "public land," filed his declaratory statement and entered at the local land office the land in controversy, in the month of February, 1867; and that afterward he complied with all the other provisions of the homestead law with reference to securing the land to himself. Notwithstanding these things, it is contended by the M. K. & T. Rly. company that the homestead entry was properly canceled by the secretary of the department of the interior on the 22d of July, 1873, and the land legally patented to the company on the 5th of January, 1876, under the provisions of the act of congress of July 26, 1866, granting land to the state of Kansas to aid in the construction of the southern branch of the Union Pacific railroad and telegraph, from Fort Riley, Kansas, to Forth Smith, Arkansas. The sections of the act which the railroad company claims as decisive in its favor are as follows:

"That for the purpose of aiding the Union Pacific railroad company, southern branch, the same being a corporation organized under the laws of the state of Kansas, to construct and operate a railroad from Fort Riley, Kansas, or near said military reservation, thence down the valley of the Neosho river

to the southern line of the state of Kansas, with a view to an extension of the same through a portion of the Indian Territory to Fort Smith, Arkansas, there is hereby granted to the state of Kansas, for the use and benefit of said railroad company, every alternative section of land, or parts thereof, designated by odd numbers, to the extent of five alternate sections per mile on each side of said road, and not exceeding in all ten sections per mile; but in case it shall appear that the United States have, when the line of said road is definitely located, sold any section, or any part thereof, granted as aforesaid, or that the right of preëmption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the secretary of the interior to cause to be selected for the purposes aforesaid, from the public lands of the United States nearest to the sections above specified, so much land as shall be equal to the amount of such lands as the United States have sold, reserved, or otherwise appropriated, or to which the right of homestead settlement or preëmption has attached, as aforesaid, which lands, thus indicated by the direction of the secretary of the interior, shall be reserved and held for the state of Kansas for the use of said company by the said secretary for the purpose of the construction and operation of said railroad, as provided by this act: *Provided,* That any and all lands heretofore reserved to the United States by any act of congress, or in any other manner by competent authority, for the purpose of aiding in any object of internal improvement, or other purpose whatever, be and the same are hereby reserved and excepted from the operation of this act, except so far as it may be found necessary to locate the route of said road through such reserved lands, in which case the right of way, two hundred feet in width, is hereby granted, subject to the approval of the president of the United States: *And provided further,* That said lands hereby granted shall not be selected beyond twenty miles from the line of said road."

"Sec. 4. That as soon as said company shall file with the secretary of the interior maps of its line, designating the route thereof, it shall be the duty of said secretary to withdraw from the market the lands granted by this act, in such manner as may be best calculated to effect the purposes of this act and subserve the public interest."

The argument of counsel for the railway company, upon

the statute is, that as the line of the road was definitely located on September 29th, 1866, on the ground opposite to the land in question, while it was public land, and before the entry of Noyes, and as a map thereof was filed with the secretary of the interior on December 3d, 1866, the grant covered by the statute attached to the lands on each side of the road, embracing both the ten-mile and the indemnity limits, and as the land was within the indemnity limit in February, 1867, (the date of Noyes's entry,) it was not subject .to homestead entry; that as the railroad company derived its title to the lands granted from the act of congress, it was not subject to be defeated by the *laches* of a government officer in failing to discharge a duty enjoined by the act; that as the act required the secretary of the interior to withdraw all lands granted, on the filing of the map of the line of the road in his office, his refusal or failure to withdraw the land from homestead or other entry until after Noyes's entry does not affect the title of the. company, or concern this controversy. The argument is fallacious and unsound, because its premises are not supported by the statute. When the road was definitely located, the right of the company to the odd sections *within* the ten-mile limit became, *ipso facto*, fixed and absolute. Its title thereto, which was previously imperfect, acquired precision, and became attached to the land. With respect to the indemnity, or "lieu lands," as they are called, and which are outside of the ten-mile limit, but within twenty miles from the line of the road, the right was only a float, and attached to no specific tracts until the selection was actually made by the secretary of the interior. To the land within the secondary or indemnity territory, from which the deficiency in the ten-mile limit was to be supplied, the railroad company had not and could not have any claims, until specially selected for the purpose of supplying the deficiency. (*L. L. & G. Rld. Co. v. United States*, 2 Otto, 741; *Ryan v. Railroad Co.*, 99 U. S. 382; *A. T. & S. F. Rld. Co. v. Rockwood*, ante, p. 292.

As Noyes made his homestead entry prior to any with-

drawal of the land from sale or entry, and before any selection had been made of it to help satisfy a deficiency in the odd sections in the ten-mile limit, and as his homestead was a part of the "public lands" at such entry, the attempted selection afterward of this tract by the secretary to supply a deficiency was without authority of the statute. The patent issued to the company was without warrant of law. The various decisions of this court to which counsel of the railroad company refers are in no way in conflict with these conclusions.

Noyes has the paramount right to the land, and the judgment of the district court will be affirmed.

All the Justices concurring.