No. 8841.

## START v. CLEGG ET AL.

EVIDENCE.—*Proof of Title to Real Estate.—Possession.—Conveyance.*—Title to real estate, where there is no actual possession, must be shown by conveyance, either from the original source of title, or from some one in possession.

SAME.—*Practice.—Harmless Error.*—Where the evidence to show title to real estate consists of a series of deeds not reaching back to the original source of title, without any evidence that any of the grantors had possession, it is utterly insufficient, and striking it out is a harmless error.

From the Clark Circuit Court.

*M. C. Hester,* for appellant.

*D. C. Anthony,* for appellees.

MORRIS, C.—The appellant sued the appellees, alleging in his complaint that he was and had been, since the 2d day of January, 1879, the owner in fee and in the possession of a part of survey 274, in the Illinois Grant, designated as forty acres in an exact square in the southeast corner of the *west* half of said survey No. 274, and being the same land conveyed to him by Richard Conden, by deed dated January 2d, 1879; that on the 5th day of January, 1879, and on divers days since then, the defendants, without leave, wrongfully and unlawfully entered upon said land and cut down and destroyed a large amount of timber thereon, to the value of $500; that they have made out of the timber so cut down a large amount of cross-ties, clapboards and hoop-poles, which remain on said land, but which the appellees threaten to and will remove, unless restrained by the order of the court; that the appellees threaten and will, unless restrained, commit further and irreparable injury to said land by cutting down the timber growing thereon; that said land is mainly valuable on account of the timber growing thereon, etc. The prayer is for a restraining order, a perpetual injunction and a judgment for damages. A restraining order was granted.

The defendants appeared and each answered the complaint by a general denial.

The cause was submitted to a jury who returned a verdict for the appellees, the defendants below. The appellant moved the court for a new trial; the motion was overruled, and the appellant excepted.

The error assigned is the overruling of the motion for a new trial.

There are many grounds alleged for a new trial, but the counsel for the appellant insists upon the second only. The others will be regarded as waived.

Upon the trial, the appellant offered and read in evidence,

subject to objection on the part of the appellees, the record of a deed from Sarah Shannon to Stephen McDonald, for the *west half* of lot No. 274, in the Illinois Grant, in Clark county, Indiana; the deed was dated October the 6th, 1855.

The appellant also offered and read in evidence, subject to objections on the part of the appellees, the record of a deed from said McDonald and wife to Ross K. Reed, dated December 4th, 1857, for forty acres of land in the southeast corner of the *west half* of said lot No. 274, in said Illinois Grant, now Clark county.

The appellant also read in evidence, subject to objections on the part of the appellees, a deed dated October 5th, 1863, from said Reed and wife to William B. Carter for the above described forty acres. He also read in evidence the record of a deed dated July 15th, 1875, subject to objections on the part of the appellees, from said Carter and wife to James T. Fanfield for said forty acres. He also read in evidence the record of a deed from Fanfield to one R. A. Logan for the forty acres described in Fanfield's deed; this evidence was put in subject to objections on the part of the appellees. The appellant also read in evidence, subject to objections, the record of a deed from Logan and wife to Richard Conden for said forty acres, dated Nov. 1st, 1875. He then read in evidence the record of a deed from Conden to him, dated January the 2d, 1879, subject to objections on the part of the appellees, for said forty acres. The description of the forty acres of land was the same in all the deeds, except the first one read in evidence.

The appellant then introduced as a witness Thomas Montgomery, who, upon being shown a map of said survey 274, in the Illinois Grant, proceeded to point out, as the record says, the land on said plat, that he and others bought of Sarah Shannon in said survey, in 1851; stated that he had been acquainted with land since 1850; it was the northeast one-half of the survey No. 274; that one Cofer, at the same time, bought the southwest one-half; that Cofer sold to Judge

Freeington, who claimed it for a while; afterwards, no one claimed it, until McDonald got it. There were some improvements about the center of the land, near the northeast line. Afterwards, one Reed came and claimed forty acres of said land, and said it run from the northeast line and took in the improvements. In 1864, one Smith claimed the *northwest* half of said survey 274, and sold it to Matthew Clegg, who has occupied said improvements, and cut timber all over it ever since, and for the last three years has had it all under fence. If survey No. 274 was divided, north and south, none of the land now claimed in this suit would be in the west half. The *southwest* half of said land was all in timber when Clegg bought it, except said improvements. Cofer had no deed for the land—had a bond for a deed; did not know whether he paid for it.

J. Clark, a witness for the appellant, pointed out on the map of survey 274, forty acres that he helped clear two or three years ago, in the east corner of the southwest half of said survey. There was no fence around it; there were from 100 to 500 cross-ties on it in April last, worth from five to twenty cents each; 300 hoop-poles, worth fifty cents per 100; 1,000 clapboards worth fifty cents per 100.

William B. Carter testified that he was acquainted with survey No. 274; that he was the same Carter named in the deed from Ross K. Reed; that he bought the land from Reed in 1863, and paid $200 for it; he had not seen the land when he bought, but Reed told him it was across the south end of the west half of the survey; that he went up and looked at it, and took possession of it in that way; that he could get no one to work on it; that the land was well timbered, and had no improvements on it; he paid taxes on it while he owned it, and no one had possession of it to his knowledge; that he had no other possession of it except by going on it and walking over it; that the forty acres lay in an exact square, in the southeast corner of the west half of survey No. 274. The

witness was shown the map, and pointed out the forty acres in the east corner of the *southwest* half of survey No. 274.

Richard Conden testified on behalf of the appellant, that he is the Conden who purchased the forty acres formerly owned by said Carter; that he bought in 1875, and sold and conveyed the land to the appellant; the land was timbered and no improvements on it; that Matthew Clegg had told him about a year ago that the forty acres lay in a square form in the southeast corner of the west half of said survey No. 274, and not in a long strip, as Carter supposed it did; that while he owned the land he paid the taxes on it.

William Zeller testified on behalf of the appellant, that Carter claimed forty acres, part of survey No. 274; that he tried to get some one to work on it when out to look at it; that Carter said his tract run from the south corner of the survey along the line towards the east corner, and was 127 rods long and fifty wide. The witness was shown a map of survey 274, and pointed out the part of the survey owned by Smith and sold to Clegg; said it was the southwest half of survey 274; said the improvements did not take in any part of the forty acres now laid off in the southwest half of said survey, but that Matthew Clegg had fenced it all up with his other lands about three years ago. He also stated that if the survey was divided north and south, no part of the forty acres claimed by the appellant would be in the west half of the survey.

Robert Dieterlin, testified for the plaintiff, that he had taken Carter to the land; that there was a house and other small improvements on said survey near the center. Carter said he owned forty acres in the survey, and that it took in the house and improvements. Witness said he helped to run off forty acres at the request of the Jeffersonville, etc., R. R. Co., in a square form in the east corner of the southwest half of said survey, and that it is the same forty acres spoken of by the witness Clark. It was not then fenced, but rails had been hauled along the line.

Isaac Wells testified on behalf of the appellant, that the house stood on the forty acres surveyed by the railroad company, and was the same now claimed by the appellant; that he took a lease of George Lewis for seventy acres which included the forty acres; that Lewis sold to Montgomery; the land is enclosed by a fence, but it was down; he had, since January last, made 400 clapboards and cut fifty logs to build a cabin.

John Baxter testified on behalf of the appellant, that he had lived on the survey sixteen years; that Carter claimed forty acres in an oblong form; that it had been enclosed by Matthew Clegg for the last three years.

George A. Lewis also testified for the appellant. His testimony, in the main, agreed with the other witnesses. George Montgomery also testified, in substance, to what the other witnesses in the case had sworn to.

The appellant rested, and the defendant Clegg and William Clegg testified for the defendants. Their testimony did not differ essentially from that produced by the appellant. The appellant then recalled George Lewis, but elicited nothing new or material. This closed the evidence, so far as it is necessary to recite it.

The appellees then asked the court to strike out and withdraw from the jury, " all the record evidence of the several deeds and wills offered in evidence by the plaintiff, because there is a variance between the description of land described in complaint and the land described in said deeds and wills, and each of them, and because said deeds and will do not establish any valid title in the plaintiff to the premises described in the complaint, and because said deeds and will do not appear to have been and were never legally executed."

The court sustained this motion, and in doing so the appellant insists it erred.

It is claimed by the appellees that lot No. 274, in the Illinois Grant, is bounded by lines running northwest and southeast, as shown by the following diagram:

and that the court is bound to take judicial notice of this sur-
vey; that the west half of the survey is necessarily in the form
of a triangle, the sides of which are represented in the dia-
gram by the diagonal line N. S., running north and south, the
line N. W., running southwest, and the line S. W., running
northwest; that there is no southeast corner to this triangle,
and that the forty acres mentioned in the complaint, can not,
as therein described, be located in any corner or part of the
west half of said survey. For these reasons, the appellees in-
sist that the deeds put in evidence by the appellant did not
embrace the land described in the complaint, and were, there-
fore, rightly withdrawn by the court from the jury.

The appellant contends that the west half of said survey
is that portion of it lying on the west side of a line drawn
equidistant from and parallel with the N. E. and S. W. sides
of said survey, and indicated on the diagram by the line A.
B., and that the forty acres described in the complaint lies, in
a square form, in the southeast corner of the west half of
said survey, as thus described.

We need not determine these questions. The testimony
does not show that any of the grantors, through whom the
appellant claims title, were at any time in possession of the
land in dispute; nor does it show that he himself was in

possession. The appellant claims to have traced his title back to Sarah Shannon. She is not shown to have been in possession; nor does it appear from whom or how she derived title, or whether she had any title at all. Something is said in the motion to strike out the evidence about a will that had been read in evidence, but it is not in the record. The appellant says:

"The proof shows that the land was all in timber and unimproved. As there could be no actual possession of such wild land, it was necessary for the appellant to show title in himself, and, consequently, constructive possession, to entitle him to maintain his action."

We agree to this statement. It is undoubtedly the law. But to show title in himself such as would draw to it constructive possession of the land in controversy, it was necessary for the appellant to trace his title back to the ultimate source of title, or show that his grantor was in actual possession. *Wood* v. *Mansell,* 3 Blackf. 125; *Broker* v. *Scobey,* 56 Ind. 588. The testimony tends strongly, if not conclusively, to show that Clegg, one of the appellees, had the land in dispute fenced up at the time Conden conveyed to the appellant. The deeds were not stricken from the record and withdrawn from the jury until after the evidence had been closed. Had the deeds remained in evidence, the appellant could not have recovered, because they did not show title in him. *Huddleston* v. *Ingels,* 47 Ind. 498; *Shipley* v. *Shook,* 72 Ind. 511; *Brandenburg* v. *Seigfried,* 75 Ind. 568. We say, as was said in the latter of the above cases, it was not enough to give evidence of conveyance to Conden, or any remote grantor. Proof of title in such grantors, respectively, was necessary to render the conveyance to the appellant effectual as evidence of title. Had the deeds remained in evidence, the verdict of the jury must have been the same. No harm was done the appellant by withdrawing them from the jury. There is no available error in the record.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be affirmed, at the costs of appellant.