Peck v. The Louisville, New Albany and Chicago Railway Company.

No. 11,808.

PECK v. THE LOUISVILLE, NEW ALBANY AND CHICAGO
RAILWAY COMPANY.

REAL ESTATE, ACTION TO RECOVER.— *Title.*—A plaintiff in ejectment must trace his title to the United States, or to some grantor in possession at the date of his conveyance.

SAME.—*Substituted School Lands.—Selection.*—Where land originally granted to a State for school purposes became unavailable, and other lands were substituted, it must be shown that such substituted lands were actually selected by the secretary of the treasury, as required by the statutes of the United States ; without such selection the title did not pass.

SAME.—*Adverse Possession.*—Adverse possession must be continuous, and under claim of right.

BILL OF EXCEPTIONS.—*Testimony.—Practice.*—In order to make testimony a part of the record, on appeal, the bill of exceptions must state, not merely that such testimony was offered, but that it was given.

· RAILROAD.—*Appropriation of Land.—Successive Additions.*—The making of an appropriation of land by a railroad company for its right of way does not exhaust the power ; but new appropriations may be made from time to time, as the necessities of the work may require.

From the Tippecanoe Circuit Court.

*J. Park*, for appellant.

*W. F. Stillwell, J. R. Coffroth* and *T. A. Stuart*, for appellee.

BICKNELL, C. C.—The appellant brought this suit against the, appellee to recover the possession of lots Nos. 1, 2 and 3,. in the town of Fulton, which are now in the town of Linwood, in Tippecanoe county, Indiana. The complaint was in the statutory form.

The defendant answered by a general denial. There was a finding by the court for the defendant. A motion for a new trial by the plaintiff, alleging that the finding was contrary to the law and to the evidence, was overruled. Judgment was rendered on the finding, and the plaintiff appealed. He assigns as error the overruling of his motion for a new trial. The suit was commenced in May, 1882.

It appeared in evidence that in 1853 the appellee built its.

main track on the land in controversy, and has used the same ever since; that about six years before the commencement of this suit the appellee built a side-track on said land, on the east side of said main track, and about two years before the commencement of this suit built another side-track on said land west of said main track; that in 1856 the appellee erected telegraph poles on the east side of its main track, and has maintained them ever since, and that said eastern side-track is between the main track and the telegraph poles. The appellant makes no claim for the land occupied by said main track. He asserts that some of the land originally granted by the United States to Indiana for school purposes became unavailable, and that other land, of which the lots in controversy are parts, was selected and granted to Indiana for public schools in lieu of such unavailable lands, by virtue of certain statutes of the United States, and that the lots in controversy were sold as school lands to a remote grantor of the appellant. The appellant also claims title by adverse possession.

A plaintiff in ejectment must trace his title to the United States, or to some grantor in possession at the date of his conveyance. *Brandenburg* v. *Seigfried,* 75 Ind. 568; *Start* v. *Clegg,* 83 Ind. 78. The land in controversy not being part of the 16th section granted to the State for school purposes, the appellant, in order to show a valid title to it under a conveyance of it as school land by the school commissioner, was bound to show that it had been selected by the secretary of the treasury as required by law.

The second section of the act of congress, 4 U. S. Stat. at Large, page 179, declares "That the aforesaid tracts of land shall be selected by the secretary of the treasury, * * * and when so selected, shall be held by the same tenure, and upon the same terms, for the support of schools, in such township, as section No. 16 is, or may be held, in the state where such township shall be situated." Under such statutes, the title does not pass until the selection is made by the proper officer.

*Atchison, etc., R. R. Co.* v. *Rockwood,* 25 Kan. 292; *Missouri, etc., R. W. Co.* v. *Noyes,* 25 Kan. 340. So, in *Doe* v. *Stephenson,* 1 Ind. 115, where a similar question arose under another act of congress, this court said: "The plaintiff was bound to prove that the land he claimed was one of the selections thus confirmed."

The appellant, undertaking to show such a selection, offered in evidence for this purpose a certified copy of a letter from the register of the land-office at Crawfordsville to the commissioner of the general land-office at Washington, in which the register stated: "Pursuant to your instructions" I have reserved from sale certain tracts of land, describing them, for the use of schools, where all or a part of section sixteen had been included in prior reservations. He then offered in evidence a certified copy of list No. 1, Crawfordsville, having the following caption: "List of proposed selections of lands for school purposes under the act of May 20th, 1826, entitled, An act to appropriate land for the use of schools," etc. This list was dated June 4th, 1833, and was signed Samuel Milroy, register. He then offered in evidence a certified copy of a letter from the commissioner of the general land-office to the register at Crawfordsville, dated October 12th, 1839, stating that he encloses a list of tracts reported as school selections under the act of May 20th, 1826, which he says have been approved by the secretary of the treasury, and which he directs the register to enter on his books as appropriated. He then offered in evidence a certificate of the commissioner of the general land-office that the three documents last mentioned were true copies and exemplifications of the originals on file in his office. This certificate is dated October 12th, 1833.

The appellee claims that the foregoing documents, even if in evidence, would not show a selection by the secretary of the treasury.

It is not necessary to consider this question, because the record shows that these documents were not in evidence, but

were merely "offered in evidence." A statement in a bill of exceptions that certain testimony was offered does not make that testimony a part of the record, and is not equivalent to the statement that such testimony was given. *Baltimore, etc., R. R. Co.* v. *Barnum,* 79 Ind. 261 ; *American Ins. Co.* v. *Gallahan,* 75 Ind. 168 ; *Douglass* v. *State,* 72 Ind. 385 ; *Woollen* v. *Wishmier,* 70 Ind. 108 ; *Goodwine* v. *Crane,* 41 Ind. 335.

In reference to several other matters of documentary evidence essential to the proof of the paper title claimed by the appellant, the statement in the record is, not that they were given in evidence or read in evidence, but that they were offered in evidence. This is true as to the deed alleged to have been executed by the school commissioner, Jesse Evans, and it is true as to the alleged plat of the town of Fulton.

The bill of exceptions states that it contains "all the evidence given or offered in said cause," but this shows only that some evidence was given and some offered, and that the bill of exceptions contains both.

The appellant, therefore, failed to prove his alleged paper title. He also failed to prove title by adverse possession. Such possession must be continuous, and under claim of right. *Doe* v. *Brown,* 4 Ind. 143.

There was no proof of possession by the grantors of the deeds given in evidence by the appellant. There was proof that on the west side of lot No. 1, between the railroad and the Wabash canal, there was once a saw-mill, which afterwards became a cooper-shop, and was destroyed by fire, but when or by whom it was built, or under what claim of right, was not shown, and it appeared that for twelve or fifteen years next before the commencement of this suit there had been no occupation of the premises except by the appellee. But the finding was right even if the appellant's title were conceded.

The New Albany and Salem Railroad Company, the pred-

ecessor of the appellee, was organized in 1847, under the act of January 28th, 1842 (Acts 1841, p. 3), entitled "An act to provide for the continuance of the construction of all or any part of the public works of this State, by private companies," etc., and under chapter 379 of the local laws of 1846, entitled "An act to change that part of the New Albany and Crawfordsville Macadamized Road, which lies between Salem and New Albany, to a railroad, to be constructed by a private company." Local Laws 1846, p. 424. Section 2 of the last named act confers upon such company all the rights, privileges and immunities granted by the act aforesaid of January 28th, 1842. By section 19 of said act of January 28th, the company was authorized "to enter upon and take possession of any lands and streams of water, which may be necessary for the construction of any such work, and to make the same available." By chapter 349 of the Local Laws of 1848, p. 456, section 3, said company was authorized to extend its work to any other points, and to have and enjoy all the powers and rights conferred upon the State by the internal improvement act of January 27th, 1836, and all the rights granted by the act aforesaid of January 28th, 1842.

A like right of extension was granted to said company by chapter 198 of the Local Laws of 1849, p. 298. Among the powers conferred upon the State by section 16 of the internal improvement act of January 27th, 1836, are the following, to wit: "To enter upon, and take possession of, and use all and singular any lands, streams and materials of any and every description necessary for the prosecution and completion of the improvements contemplated by this act."

Section 17 of the same act provides that no claim for damages shall be allowed unless made within two years after the property has been taken possession of as aforesaid.

Under the foregoing provisions, the New Albany and Salem Railroad Company built its road to Lafayette, and afterwards extended it to Michigan City. Cars were running on the northern division of the road in 1853. Said company held

its road and franchises until 1872, when, under a foreclosure sale, the appellee, as purchaser, succeeded to all the rights and possession of said company, and has held the same ever since.

The appellant claims that the right of way of the appellee is confined to the ground covered by its main track. But this claim can not be sustained. Making one appropriation under the acts aforesaid of January 27th, 1836, and January 28th, 1842, does not exhaust the power, but new appropriations may be made from time to time, as the necessities of the work may require. *Prather* v. *Jeffersonville, etc., R. R. Co.,* 52 Ind. 16, 42, and the cases there cited. In the Supreme Court of Illinois, *Chicago, etc., R. R. Co.* v. *Wilson,* 17 Ill. 123, it was said: "It would be a disastrous rule, indeed, to hold, that a railroad company must, in the first instance, acquire all the grounds it will ever need for its own convenience or the public accommodation."

Section 16 of the internal improvement act above cited, did not fix any limit of width to the land to be appropriated; it authorized the company to take as much as was necessary.

In the case of *Prather* v. *Jeffersonville, etc., R. R. Co., supra,* the powers of that company under a special charter were similar to those granted by said section 16, *supra,* except that the land to be taken could not exceed sixty feet in width. The company had built its track without fixing any width, and it had a main track and telegraph poles; its situation, except as to the width of its right of way, was almost exactly the same as that of the appellee. This court held that the company was not limited to the ground covered by the track and the telegraph poles, but had a right to such land as was necessary for its road, with all necessary appendages, including place for the erection of telegraph poles at safe distance from the track, and to the use of the intervening space between said track and said telegraph poles. The court said: "It acquired the right of way for the track, and the right to make drains or ditches, fences, side-tracks, turn-tables, water tanks, wood or coal yards, and depots for

passengers and freight, and to erect telegraph poles, and, so far as this right was exercised, the appropriation for such purposes became complete, and gave it the right to use whatever ground was necessary for such purposes, and the intervening space between the track and the fixture or appendage erected."

The evidence shows that in 1856, the appellee erected telegraph poles on the east side of their main track which they have ever since maintained; these poles were put up, one of them nineteen feet, one eighteen feet, and another fifteen feet eight inches from the center of the main track, and between these telegraph poles and the main track is the eastward side-track. The evidence also shows that the west end of the westward side-track is seventeen feet four inches from the center of the main track, so that the whole width of the land actually appropriated and in use by the appellee is thirty-six feet four inches in addition to what may be necessary for the proper use of said side-tracks.

The same general rules asserted in *Prather* v. *Jeffersonville, etc., R. R. Co., supra,* were repeated in *Prather* v. *Western Union Tel. Co.,* 89 Ind. 501. Under these decisions and under the foregoing statutes, the only question is whether the ground thus occupied by the appellee is necessary to make their work available, within the meaning of such statutes. There was evidence upon the trial tending to show that a much larger width of land was absolutely necessary for the proper maintenance and operation of the appellee's railway.

The finding of the court was not contrary either to the law or the evidence, and there was no error in overruling the motion for a new trial. The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and the same is hereby in all things affirmed, at the costs of the appellant.

Filed April 23, 1885.