## Adolph Thomas, Appellee, v. Ohio Coal Company, Appellant.

1. WATERS AND WATER COURSES, § 32*—*what is nature of damages for pollution of natural water course.* Damages sought for the pollution of a natural water course which flows through plaintiff's pasture and in which he waters his stock are possessory damages.

2. WATERS AND WATER COURSES, § 32*—*what plaintiff must prove in action for damages for pollution of natural water course.* In an action to recover for damages sustained by the pollution of a natural water course on plaintiff's land, where plaintiff seeks possessory damages only, it is only necessary for plaintiff to prove that he was in possession and control of the premises in question during the whole time for which he seeks damages.

3. WATERS AND WATER COURSES, § 29*—*when evidence sufficient to show pollution of water course.* In an action to recover for the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

pollution by the flow from defendant's oil wells of a natural water course flowing through plaintiff's pasture and from which he waters his stock, evidence examined and *held* clearly to preponderate in favor of the contention that salt water and oil escaped from defendant's wells into the water course and to plaintiff's pasture.

4. DAMAGES, § 192*—*when allowed*. The mere fact that the amount of damages may be difficult to ascertain is no reason why damages should not be allowed.

5. TORTS, § 23*—*when action may be brought against wrong-doers separately*. Where one is damaged by the contributive action of several parties without concert of action, the action may be brought against each one separately for the damage caused by him.

6. DAMAGES, § 191*—*when amount of damage caused by one of several wrongdoers for jury*. In an action where there is evidence that the acts of another may have contributed with the acts of defendant to cause the damage sued for, it is for the jury to say, from all the evidence, what amount of damages should be allowed to plaintiff.

7. WATERS AND WATER COURSES, § 29*—*when evidence sufficient to sustain verdict as to amount of damages for pollution of water course*. In an action to recover for pollution by defendant's oil wells of a natural water course flowing through plaintiff's pasture and from which he waters his stock, where there was evidence that the wells of another than defendant might have contributed to cause the damage sued for, *held* that the finding of the jury of a verdict for plaintiff for a specified amount was warranted by the evidence.

8. NUISANCE, § 62*—*when pollution of water course a public nuisance*. Under paragraph 3 of section 221 of the Criminal Code (J. & A. ¶ 3859), providing that to "corrupt or render unwholesome or impure the water of any spring, river, stream, pond or lake, to the injury or prejudice of others," shall be a public nuisance, it makes no difference how the water is polluted or rendered unwholesome or made impure, if in fact it is rendered unwholesome or impure to the prejudice of others.

9. RIPARIAN OWNERS, § 15*—*what are rights of riparian owners as to flowage*. The right of every owner of land through which a stream of water flows, to have the same flow in its natural state, extends to the quality as well as the quantity of water, and therefore one who pollutes or contaminates the water may be liable to those injured thereby.

10. WATERS AND WATER COURSES, § 17*—*when stream may not be polluted*. It is settled law in this State that no one can directly or indirectly foul or pollute a stream of water, even in the pursuit

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of a legitimate business, and thereby damage a lower proprietary owner without rendering himself liable.

11. WATERS AND WATER COURSES, § 31*—*when instruction on rights of riparian owners correct.* In an action for damages for the pollution of a natural water course flowing through plaintiff's land, an instruction that owners of land through which a stream of water flows is entitled to the use and enjoyment of the water and to have the same flow in its natural state without interruption or pollution, *held* correct.

12. APPEAL AND ERROR, § 1554*—*when giving of instructions not conforming to pleadings harmless error.* In an action to recover for pollution by defendant's oil wells of a natural water course flowing through plaintiff's pasture, and from which he waters his stock, instructions referring to injuries to growing crops as well as injuries to the pasture, when plaintiff. claims no damage for injuries to crops, are not reversibly erroneous though incorrect, where the instructions limit plaintiff to such damages as are shown by the evidence.

13. WATERS AND WATER COURSES, § 31*—*when instruction on nonliability of owner of oil well for pollution of stream properly refused.* In an action to recover for the pollution by defendant's oil wells of a natural water course flowing through plaintiff's pasture and from which he waters his stock, it is proper to refuse an instruction that defendant was not liable if the damage sued for occurred in the ordinary operation of defendant's wells and if the escape of the salt water was a necessary incident in the management of its business.

14. INSTRUCTIONS, § 126*—*when abstract and argumentative instructions properly refused.* It is not error to refuse instructions which are abstract and argumentative in form.

15. INSTRUCTIONS, § 88*—*when instruction on preponderance of evidence properly refused.* An instruction that plaintiff, in order to recover, must prove his case to the satisfaction of the jury by a preponderance of the evidence is erroneous and is properly refused, such instruction not being a correct statement of the amount of evidence required.

16. DAMAGES, § 241*—*when verdict will not be disturbed on ground of excessiveness.* Unless a verdict is so excessive as to be against the manifest weight of the evidence, it is the duty of a reviewing court to let the verdict stand.

17. DAMAGES, § 191*—*when question for jury.* The question of amount of damages is one peculiarly for the jury.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Thomas v. Ohio Coal Co., 199 Ill. App. 50.

Appeal from the Circuit Court of Clinton county; the Hon. JAMES C. McBRIDE, Judge, presiding. Heard in this court at the March term, 1915. Affirmed. Opinion filed April 17, 1916.

ABRAM SIMMONS and HUGH V. MURRAY, for appellant; M. P. MURRAY, GEORGE E. MURRAY and ALOYS LAGER, of counsel.

FORD & JONES, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

This is an action on the case brought by appellee against appellant and certain other oil companies to recover damages for injury sustained by appellee on account of the alleged pollution of the waters in a natural water course running through the premises of appellee, and which premises were used for pasturage purposes. The suit was dismissed by appellee against all of the defendants except appellant. A trial was had which resulted in a verdict and judgment in favor of appellee for $125. From that judgment appellant prosecuted this appeal.

The verdict in this case discloses that appellee in addition to several hundred acres of farm lands was the owner in possession of about seventy acres of pasture land through which flowed a natural water course, known as Lost Creek. Beginning with the year 1909 various oil companies began to sink oil wells in the lands lying to the north and east of appellee's pasture. The lands on which said oil fields were located, either directly or indirectly, had their natural drainage into said creek.

The evidence of appellee's witnesses is to the effect that beginning with the year 1909 and 1910, the waters of said creek were being polluted by the flow from said oil wells. Certain of the witnesses describing the water as being "awfully salty," "some oil on it." "The

water not being fit for the cattle to drink." "The oil making the cows' bags greasy and hard to get the milk." "That it ruined the grass in the pasture and that they saw lots of oil in the bed of the creek wherever there was a drift." In fact, the evidence is to the effect that the water which had heretofore been of a pure character in said stream as it passed through appellee's pasture became unfit for the cattle to drink and that it damaged the grass in said pasture. The evidence further discloses that material damages were suffered by the appellee on account thereof.

Appellant concedes that appellee is damaged, but contends that it did, not cause the damage. On page forty of appellant's brief we find the following: "No effort was made to minimize or to disprove appellee's claim of damages by appellant. Indeed, there never was any doubt about his having suffered some damage from both oil and salt water. Appellant, however, was not to blame."

Appellant assigns numerous errors on the record, but it will not be necessary for us to give specific attention to each separately. The errors assigned may be summarized as follows:

First, that appellee failed to prove ownership of the land in question. Appellant in his argument on this proposition proceeds on the theory that the same proof of ownership must be made in an action for damages of this character as would have to be made in an action which directly involved the title. The only evidence of damages submitted to the jury on the trial was for the injuries suffered by appellee on account of the pollution of the waters of Lost Creek so far as the same pertained to the use made by appellee of said waters for his stock and as to the damage to his pasture. As the case was finally submitted to the jury, no evidence was offered as to a permanent injury to the land. The damages claimed are what is known as possessory

damages. It was, therefore, only necessary for appellee to prove that he was in the possession and control of the premises in question, and had been during all of the time for which he sought damages. *Advance Elevator & Warehouse Co. v. Eddy*, 23 Ill. App. 352; *Joseph Schlitz Brewing Co. v. Compton*, 46 Ill. App. 34; *City of Chicago v. McGraw*, 75 Ill. 571; *McLean v. Farden*, 61 Ill. 109. The evidence, however, discloses that appellee had been in possession of the premises in question more than thirty years.

Second, appellant next contends that the evidence does not connect it with the damages suffered by appellee. It is contended by appellant that the evidence does not disclose that the wells owned by appellant contributed to the injury of appellee's premises. Some eight or ten witnesses on behalf of appellee testified that they knew the location of the wells of appellant, and that they observed the flow of the salt water therefrom. Some of said witnesses testified that they observed the "rainbow" on the water, which as we understand has reference to a thin covering of oil on the water. These witnesses further testified that they traced these waters from the wells of appellant to Lost Creek, which creek flowed directly through appellee's land. In fact, appellant in its brief concedes that all of the lands on which said oil wells were located in that vicinity had their drainage into Lost Creek. Appellant also concedes that salt water flowed from its wells but contends that practically no oil escaped on account of the reservoirs which they had constructed. The witnesses for appellee, however, testified to having observed where the water had drained from the reservoirs of appellant, and that it showed that oil had also escaped through said drains and from there into Lost Creek. The evidence, we think, clearly preponderates in favor of appellee's contention that salt water and some oil, at least, escaped from the wells of appellant to said Lost Creek, and to the pasture of appellee.

Third, appellant's third contention is that inasmuch as other oil companies contributed to the damage suffered by appellee, and inasmuch as it cannot be definitely ascertained the exact extent to which appellant's wells contributed to said injury, that therefore appellee cannot recover. In connection with this contention we would say that if this rule should be adopted by the courts it would allow certain independent agencies, by their wrongful acts, to cause damages to innocent third parties without being liable therefore, simply because the parties injured would not be able to prove conclusively the exact amount of damages contributed by each. We do not believe that this rule obtains in this State. The mere fact that the amount of damages may be difficult to ascertain is no reason why damages should not be allowed. *Daughetee v. Ohio Oil Co.*, 263 Ill. 518.

In Sutherland on Damages (2nd Ed.), vol. 1, at page 572, the author in discussing this subject says: "In cases where parties are sued for contributive action in damaging one, where there is no concert of action, the action may be brought against each one separately for the damages caused by them; and while the damages may be difficult to ascertain, the jury would measure the injury of each with a liberal hand."

While it is conceded that it is hard to ascertain the exact amount of damages which appellee's lands may have suffered from the flow of salt water and oil from the wells of appellant, still the record is not without evidence on which, we think, the jury would be able to make a reasonable and conservative estimate of the same. The evidence showed the number of oil companies operating on the land draining into Lost Creek with the number of wells operated by them respectively. The evidence also discloses that the appellant and the Southwestern Oil Company were the two main companies operating in said fields; that out of some-

thing over eighty wells, appellant had eighteen, and that the wells of appellant were among the strongest and heaviest producers in said field. Then, too, numerous witnesses testified on behalf of appellee and certain witnesses testified on behalf of appellant, describing the conditions surrounding appellant's wells and what they observed with reference to the flow of water and oily substances from the same.

It was for the jury to say, from all the evidence, what amount of damages should be allowed appellee from appellant, and from the amount allowed we are unable to say that the jury were not warranted in making such finding.

Fourth, appellants next contention is that before it could be held liable the proof must show that in operating its said wells it used its property in an unreasonable manner. In other words, that if in the legitimate operation of its wells, damages must necessarily be sustained by appellee through the contamination of the waters of said creek, that the injury would be *damnum absque injuria*. Appellant cites several cases from the courts of other States which it insists supports its contention. We do not, however, believe that this question is an open one in this State. The statute provides that "it is a public nuisance to corrupt or render unwholesome or impure the water of any spring, river, stream, pond or lake, to the injury or prejudice of others." Section 221, ch. 38, Hurd's Revised Statutes, being part of the Criminal Code. (J. & A. ¶ 3859.)

In the case of *Voss v. Chicago Sandoval Coal Co.*, 165 Ill. App., page 565, after quoting said statute at page 568, this court says: "Under this statute it would make no difference how the stream was polluted or rendered unwholesome, or how the water was made impure; if it in fact was rendered unwholesome, or impure to the prejudice of others then it would be a violation of the statute."

In the American & English Encyc. of Law, vol. 28, at page 968, the author says: "The right of every owner of land through which a stream of water flows, to have the same flow in its natural state, extends to the quality as well as the quantity of water, and therefore one who pollutes or contaminates water may be liable to those injured thereby." This doctrine is also recognized in the cases of *Tetherington v. Donk Bros. Coal & Coke Co.*, 232 Ill. 522; *City of Kewanee v. Otley*, 204 Ill. 402; *Beidler v. Sanitary District of Chicago*, 211 Ill. 628.

Other authorities in this State could be cited to the same effect, but we regard the rule that no one can directly or indirectly, even though in the pursuit of a legitimate business, foul or pollute a stream of water and thereby damage a lower proprietary owner without rendering himself liable for damages therefor, as being so well established in this State that the citation of authorities is unnecessary.

Fifth, appellant next contends that the court erred in giving the three instructions given on behalf of appellee and in modifying the instructions given on behalf of appellant, and in refusing certain instructions offered by appellant. Appellee's first instruction presented an abstract proposition of law to the effect that the owners of land through which a stream of water flows are entitled to the use and enjoyment of said water and to have the same flow in its natural state without interruption or pollution. We believe this states a correct principle of law and is supported by the authorities above cited.

The objections urged to appellee's second and third instruction is that they refer to damage to the growing crops as well as injuries to the pasture. No damages were claimed as to growing crops and the instructions should not have referred to them, but as these instructions especially limit the jury to the damages sustained by appellee as shown by the evidence, we do not think appellant was seriously prejudiced.

Complaint is made by appellant that the court erred in modifying its first, second, third, fourth, fifth, sixth and eighth instructions. We have examined the instructions as offered and as modified and given, and we do not believe that the court erred in making the modifications. In fact, the modifications made the instructions conform with the view of the law held by us in this case.

We have examined appellant's refused instructions and are .of the opinion that the court did not err in their refusal as each of them present in our judgment an incorrect theory of the law covering this case. Instructions ten, eleven and fifteen inform the jury that if the damages to appellee occurred in the ordinary operation of appellant's wells, and the escape of said salt water and oil to Lost Creek was a necessary incident to such operation and was unavoidable in the management of said business, appellant would not be liable for damages therefor. What we have already said disposes of these instructions as we do not believe these instructions present a correct principle of law.

Refused instruction nine, so far as proper, was covered by other instructions given on behalf of appellant. Instruction twelve presents an erroneous rule for ascertaining damages. Instruction thirteen is abstract and argumentative in form and it was not error to refuse the same. Instruction fourteen informs the jury that before the plaintiff can recover he must prove his case to their *satisfaction* by a preponderance of the evidence. This is not a correct statement of the rule as to the amount of evidence required.

Lastly, it is contended by appellant that the verdict was excessive. We cannot, however, believe that appellant can very seriously contend in view of the evidence that this verdict was excessive. At least, it cannot be said that the verdict was so excessive as to be against the manifest weight of the evidence, and un-

less we can say this, it would be our duty to let the verdict stand as the question of damages is one peculiarly for the jury.. We are of the opinion that the verdict was warranted by the evidence and that it is not excessive.

Finding no reversible error in this record the judgment of the trial court will be affirmed.

*Judgment affirmed.*

Justice McBride took no part in the hearing or decision of said cause.