INDIANA PIPE LINE COMPANY *v.* CHRISTENSEN.

[No. 23,242.   Filed June 27, 1919.]

1. JUDGMENT. — *Nuisance.* — *Damages.* — *Continuing Abatable Nuisance.*—For a continuing abatable nuisance, damages may be recovered only to the date of the action, as there is a presumption that the cause producing the damage will be removed by an abatement of such nuisance; but if the nuisance is not abated, successive actions may be maintained so long as it is permitted to continue, in any one of which damages may be recovered for injuries occasioned prior to the commencement of the action and within the statute of limitations, not extending back of a former recovery.   p. 403.

2. NUISANCE.—*Damages.—Continuing Nuisance.*—In an action for injury to products of the soil caused by a continuing abatable nuisance, the measure of damages is the depreciation in the rental value of the real estate affected.   p. 403.

3. ACTION.—*Permanent Injury.*—Where a single completed act causes an injury to real estate, the effects of which will continue indefinitely, the damages occasioned thereby must be entirely compensated in a single action, since there is no continuing wrong upon which to base successive actions.   p. 404.

4. DAMAGES.—*Measure.—Permanent Injury.*—Where a portion of land is permanently appropriated by wrongful act, or where it is so occupied as to deprive the owner of the use or occupation thereof, the general rule as to the measure of damages is the depreciation in the market value of the land occasioned by the appropriation or trespass.   p. 404.

5. TRESPASS.—*Quare Clausum Fregit.—Nature of Action.*—The foundation of the action *quare clausum fregit* is the breaking by the defendant of the plaintiff's close, and the action can be maintained by one in possession having an interest in the profits only.   p. 407.

6. TRESPASS.—*Quare Clausum Fregit.—Action.—Right to Maintain.*—In an action of trespass *quare clausum fregit* it is necessary for the plaintiff to prove only that he was in possession of the land and that the defendant entered thereon without

right, such proof entitling the plaintiff to nominal damages, without proof of injury; and upon additional proof of injury to products of the soil, the plaintiff is entitled to compensatory damages. p. 407.

7. ACTION ON THE CASE. — *Pollution of Stream.* — *Injury to Riparian Owner's Land.* — Under the common-law forms of pleading, trespass on the case is the proper form of remedy for injuries occasioned by oil carried by the waters of a creek from a defective pipe line and deposited on land, since the injury is not the direct result of force, but the indirect result of a wrongful act. p. 408.

8. ACTION.—*Forms.*—*Common Law.*—Though the common law forms of actions are abolished in this state, the rules of common law are not abrogated, and they obtain in civil actions under the Code whenever applicable to the facts pleaded and proved. p. 408.

9. TRESPASS.— *Trespass on the Case.*— *Action.*— *Defense.*— A wrongdoer who by a single completed act causes permanent injury to land can be compelled to pay only a single compensation therefor, and such wrongdoer, when sued for the injury to the freehold by one in possession, may set up as a defense that there is a valid outstanding title in another. p. 409.

10. TRESPASS.—*Trespass on the Case.*—*Action.*—*Defense.*—In an action against a wrongdoer for injury to land, where the title to the land is in issue only as indirectly affecting the measure of damages, proof that the plaintiff was in actual possession of the land under a claim of ownership is sufficient to make a *prima facie* case of title; and in the absence of countervailing proof, the *prima facie* showing of title will stand. p. 410.

11. ACTION.—*Damages.*—*Trespass on the Case.*—*Defense.*—*Successive Actions.*—In an action for injuries to the plaintiff's land caused by crude oil that was carried from the defendant's defective pipe line by the waters of a creek and deposited on a portion of such land, where it is not the plaintiff's theory that such portion has been wrongfully appropriated for the purpose of flowing oil thereon throughout the future, and the evidence shows the plaintiff to be in possession of all the land in the condition in which it was left after the water receded and fails to show a continuous or intermittent flow of oil causing injury so long as such pipe line is operated, the entire damage must be recovered in a single action and the recovery limited to damage resulting from the oil permitted to flow upon the land prior to the commencement of the action. p. 411.

12. DAMAGES.—*Permanent Injury.*—*Evidence.*—In an action by

a plaintiff for injuries to his land caused by crude oil that was carried from the defendant's defective pipe line by the waters of a creek and deposited on a part of the land, where the evidence showed only injury to products of the soil and that some of the plaintiff's stock was killed or injured by eating grass or drinking water contaminated with oil, but failed to show that the fertility or productive value of the soil was destroyed thereby, a verdict of $17,000 must be deemed excessive. p. 412.

13. Appeal.— *Review.— Verdict.—* Where it appears from the record that a verdict is based on improper items of damages, the verdict will be held to be excessive, and a new trial will be granted; and the same rule applies where a verdict is based on an item of damage that has no evidence to sustain it. p. 414.

From Laporte Circuit Court; *James F. Gallaher,* Judge.

Action by Christian Christensen against the Indiana Pipe Line Company. From a judgment for the plaintiff, the defendant appeals. *Reversed.*

*H. D. Bushnell, Holman, Bernetha & Bryant, Simmons & Daily* and *Myers, Gates & Ralston,* for appellant.

*George Burson, Darrow & Rawley* and *F. M. Trissal,* for appellee.

Lairy, C. J.—This was an action to recover damages for the loss of cattle and the permanent injury to the 700-acre farm of appellee, Christian Christensen, occasioned by the escape of oil from the pipe line of appellant, Indiana Pipe Line Company. Appellee's complaint alleges among other things that he is the owner of 700 acres of land in Stark county, Indiana, which he has used for the past twenty years for the combined purposes of general farming and stock raising, and which is located on both sides of Pine Creek below the point where Pine Creek is crossed by appellant's pipe lines, which are used for the purpose of transporting crude petroleum oil across the State of Indiana. It is alleged that appellant negligently, carelessly and knowingly failed to make any proper inspection of its pipe

lines, and knowingly allowed the pipe lines to become disjointed, rotten, decayed, eaten with corrosion, and leaky, so that at divers times during the years 1914, 1915 and 1916, great quantities of crude petroleum oil escaped from appellant's pipe lines and flowed over and upon 500 acres of appellee's land, permeating, saturating and poisoning the soil. The complaint states that, by reason of the escape of such oil, the grasses and other vegetation of appellee's lands were destroyed, and the cattle of appellee became sick and died from the effect of the oil on the grass, and in the water which they drank. It is also alleged that the use of the entire 700-acre tract was impaired by reason of the destruction of the productive qualities of the 500 acres. A trial by jury resulted in a verdict and judgment in favor of appellee for the sum of $17,000.

The controlling question presented by the several assignments of error relates to the measure of damages applicable to a case of the kind here presented.

1. Appellant asserts that the evidence shows only an injury to the products of the soil by a continuing abatable nuisance, and insists on the rule

2. of damages applicable in such cases. In cases of this character damages can be recovered only to the date of the action, as there is a presumption that the cause which produces the damage will be removed by an abatement of the nuisance. If the nuisance is not abated, its continuance, resulting in a damage, is a new and separate injury which gives rise to a new cause of action. Successive actions may be maintained so long as the nuisance is permitted to continue, in which damages may be recovered for all injury occasioned prior to the commencement of the action and within the statute of limitations, not extending back of a former recovery. The measure of damages in such a case is the depreciation in the rental value of the real estate af-

fected. *Cleveland, etc., R. Co.* v. *King* (1899), 23 Ind. App. 573, 55 N. E. 875; *Vandalia R. Co.* v. *Yeager* (1915), 60 Ind. App. 118, 130, 110 N. E. 230.

The rule stated applies to a tort of a continuous nature. By that is meant a wrongful act which produces a state of affairs, the continuance of which constitutes a new wrong each moment; but it does not apply to a single completed wrongful act resulting in an injury, the effects of which will continue indefinitely. The damages occasioned by such an injury must be entirely compensated in a single award as there is no continuing wrong on which to base successive actions. The award covers all resulting damages both past and prospective. *City of Lafayette* v. *Nagle* (1887), 113 Ind. 425, 15 N. E. 1; *Porter* v. *Midland R. Co.* (1890), 125 Ind. 476, 25 N. E. 556.

Where a portion of the land is permanently appropriated, or where it is so occupied as to deprive the owner permanently of the occupation or use of a portion of his land, the general rule as to the measure of damages is the depreciation in the market value of the land occasioned by the appropriation or trespass. In the case of *Indiana, etc., R. Co.* v. *Eberle* (1887), 110 Ind. 542, 11 N. E. 467, 59 Am. Rep. 225. Judge Mitchell, speaking for the court said: "Whether the plaintiff may recover for the permanent depreciation in the value of his property, depends upon the permanent character of the injury, and the frame of the action. Where the character of the injury is permanent, and the complaint for damages recognizes the right of the defendant to continue in the use of the property wrongfully appropriated, and to acquire as a result of the suit, the plaintiff's title to the right appropriated, we can see no reason why the damages may not be assessed on the basis of the permanent depreciation in value of the property injured, as in *Henderson*

v. *New York, etc., R. R. Co.,* 78 N. Y. 423; *Lohr* v. *Metropolitan Ele. R. R. Co.,* 10 N. E. Rep. 528; *Wichitaw, etc., R. R. Co.* v. *Fechheimer,* 12 Pac. Rep. 362; Wood Nuisances, section 856; *City of North Vernon* v. *Voegler,* 103 Ind. 314."

In the case at bar the court adopted the measure of damages applicable to the assessment of damages for lands appropriated. Evidence was admitted as to the market value of the entire 700-acre tract of land immediately before it was overflowed by the oil which escaped from defendant's pipe lines and the value of the same land after such overflow; and, under the instructions, the jury was permitted to base its award of damages on evidence of this character. Appellant asserts that the trial court erred in applying this rule for the assessment of damages to the facts as disclosed by the evidence in this case.

There is evidence to show that in the years 1914, 1915 and 1916 quantities of oil escaped from the pipe lines owned and operated by appellant company and was carried on the surface of the water down the ditches constructed through lands owned by appellee; and that, by reason of the water overflowing the lands of appellee, the oil was carried on and over parts of said land, where it remained on the grass and vegetation and in the soil after the water receded or evaporated. A part of the land having an area of about 500 acres was prairie land, and the remainder consisted of higher land on which the buildings were situated. There is no evidence that the high land was affected by the oil, but there is evidence to show that oil was found in considerable quantities on portions of the low land, and that it permeated the soil and was found on the grass and vegetation growing thereon. The evidence shows that the low land prior to the overflow produced native perennial grasses which were valuable for pasturage and

for hay, and that, in the years following the floods and before the trial, which began on September 28, 1916, portions of the land on which this grass had previously grown failed to produce the grass, being covered by weeds instead. As disclosed by the evidence, the land had been previously used for a stock farm, the low lands being utilized as meadow and as pasture for the cattle, and the buildings constructed on the higher land being of a size and character suitable for the storage of feed and the shelter of stock.

There can be no doubt that it was the theory of the plaintiff below that the injury to the real estate was of a permanent character, affecting the value of the farm as a whole, and that the trial court adopted that theory on the trial.

Appellant takes the position that, under the law and the evidence, appellee was not entitled to recover permanent damages to the farm as a whole, measured by the diminution in the market value of the fee-simple interest therein, for the reason that the evidence fails to show any title in appellee as to that portion of the farm lying north of the meander line established by the government survey and containing about 192 acres. It is asserted that appellee was required under the law to prove title to the land affected, and that the evidence shows that the title to the part of the farm on which the buildings are located north of the meander line in section 36 rests in the State of Indiana or in the government of the United States. This position of appellant is met by appellee with the proposition that a person who is in possession of land claiming to be the owner may maintain an action against a wrongdoer for permanent injury to the land without disclosing anything further than his possession and claim of ownership; and that such wrongdoer cannot set up an outstanding title in a third party for the purpose of defeating a recovery.

As sustaining this proposition, appellee cites several authorities which he claims to be in point. *Bristol Hydraulic Co.* v. *Boyer* (1879), 67 Ind. 236; *Ohio, etc., R. Co.* v. *Trapp* (1891), 4 Ind. App. 69, 30 N. E. 812; *Cleveland, etc., R. Co.* v. *Born* (1911), 49 Ind. App. 62, 96 N. E. 777.; *Barber* v. *Barber* (1863), 21 Ind. 468; *Winship* v. *Clendenning* (1865), 24 Ind. 439.

Appellant cites a number of cases to sustain the proposition that it is necessary for the plaintiff to prove title to the land in cases where he seeks to recover damages for permanent injury to the freehold. *Thompson* v. *Norton* (1860), 14 Ind. 187; *Broker* v. *Scobey* (1877), 56 Ind. 588; *Start* v. *Clegg* (1882), 83 Ind. 78; *City of Lafayette* v. *Wortman* (1886), 107 Ind. 404, 8 N. E. 277; *Burrow* v. *Terre Haute, etc., R. Co.* (1886), 107 Ind. 432, 8 N. E. 167; *Porter* v. *Midland R. Co., supra.*

The cases cited have been of no material assistance to the court. The foundation of the action *quare clausum fregit* is the breaking by defendant of plaintiff's

5. close. Its purpose is to recover damages for an invasion of the plaintiff's right of possession, and it can be maintained by a person in possession having no interest in the soil but an interest in the profits only. *Darling* v. *Kelly* (1873), 113 Mass. 29.

In such an action it is only necessary for plaintiff to prove that he was in possession of the land, and that the defendant entered thereon without right.

6. Such proof entitles the plaintiff to recover nominal damages. The cases cited by appellee hold that in such cases plaintiff need not prove title, proof of possession being sufficient, and that a defendant cannot prove title in another to defeat the action. It is well settled that one rightfully in possession may maintain an action against one who wrongfully invades his possession, even though it be the owner of the fee-simple interest in the land. He may recover nominal damages,

without proof of injury, and on proof of injury to the products of the soil he may recover actual possessory damages. An examination of the cases cited by appellee will show only such damages were proved and allowed as affected the plaintiff's possessory rights.

The cases cited by appellant do not sustain the position to which they are directed. They do not hold that it is necessary for plaintiff, in an action *quare clausum*, to prove a fee-simple title to the land. They hold that it is only necessary to prove possession either actual or constructive. If actual possession cannot be shown, constructive possession must be proved. In these cases actual possession was not shown and proof of constructive possession follows the title. It was held to be necessary to show a chain of transfers extending back to the government or to a person in possession at the time of his transfer, not for the purpose of proving title, but for the purpose of proving possession.

Under the common-law forms of pleading, an injury such as is here described could not have been redressed in an action *quare clausum*, because the damages

7. were not the direct result of force, but resulted indirectly from the wrongful act of the defendant. The proper form of action would have been

8. trespass on the case; but the rule of law which required only proof of possession, where the damages sought were based on injuries affecting the possessory rights of plaintiff, would of necessity be applicable in the latter form of action. The common-law forms of action are abolished in this state, but the rules of common law are not abrogated. These rules obtain in civil actions under our Code whenever applicable to the facts pleaded and proved.

Appellant in this case proceeds on the theory that he is the owner in possession of the 700 acres of land described in his complaint, and he seeks to recover dam-

ages for injury to his personal property, to the products of the soil, and also for injury of a permanent nature to his interest and estate in the land itself. If he had pleaded and proved damages only to his possessory rights, there could be no doubt that proof of possession would be sufficient to entitle him to recover damages of that nature; but the damage recovered, as shown by the evidence, the instructions and the verdict, was the diminution of the market value of the fee-simple interest in the whole tract of land described.

The court is required to determine whether damages of this kind can be recovered by plaintiff on proof of mere possession, or whether it is necessary for him to prove his interest in the land in order to entitle him to recover damages of a permanent nature. It may be that proof of possession being *prima facie* evidence of ownership would be sufficient to make a *prima facie* case in favor of plaintiff. Can the defendant rebut the *prima facie* case so made by evidence showing the true state of the title and thus disclose title in a third person? It is said that the defendant, having no interest in such a title, cannot be permitted to set up or assert it against the plaintiff. The purpose of such evidence is not to establish or enforce an outstanding title against plaintiff in such a way as to affect his title or interest in the land as between him and the owner of such outstanding title. The purpose of such evidence is to rebut the *prima facie* case of ownership made by plaintiff and to show that the damages which he seeks to recover for permanent injury to the freehold did not accrue to him on account of his interest in the land, but that such damages accrued in favor of another on account of his interest therein. It is true that the defendant can have no interest in having an outstanding title enforced against the plaintiff, but when he is called on to make compensation for an injury

of such a nature as to affect and reduce the value of the fee-simple estate in the land, he has an interest in having the court determine whether plaintiff, by reason of his interest in the land, is entitled to recover for the injury claimed. If this question cannot be presented by a defendant, he may be required to make compensation for an injury which materially diminishes the market value of the fee-simple estate in land at the suit of a person having only a possessory interest therein, after which he could be compelled at the suit of the owner of the fee to make a second compensation for the same injury. The law will enforce only a single compensation even as against a wrongdoer. The reasons stated would seem to compel the conclusion reached by the court; but, aside from the reasons upon which the conclusion rests, it is fully sustained by authorities bearing directly on the subject. 1 Sedgwick, Damages (9th ed.) §70; *Kelly* v. *New York, etc., R. Co.* (1880), 81 N. Y. 233; *Wallace* v. *Goodall* (1846), 18 N. H. 439; *Thomas* v. *Ohio Coal Co.* (1916), 199 Ill. App. 50; *McLeod* v. *Spencer* (1908), 21 Okla. 165, 95 Pac. 754, 17 L. R. A. (N. S.) 958, 129 Am. St. 774.

The court has reached the conclusion that, in cases where a plaintiff seeks to recover damages for an injury which permanently affects the land by reducing its market value, it is incumbent on him to prove such an interest in the land as entitles him to receive damages of that nature. It was therefore incumbent on appellee to prove title to the entire farm.

Appellant proved that he was in possession of the entire farm of 700 acres, and that he claimed to own it. Proof of actual possession under a claim of ownership is sufficient to make a *prima facie* case of title, where the title to real estate is not directly in issue, but arises only indirectly as an incident to the right of the plaintiff to recover damages against

a trespasser. *Hungerford* v. *Redford*, (1872), 29 Wis. 345; *Rotch's Wharf Co.* v. *Judd* (1871), 108 Mass. 224; *Advance Elevator, etc., Co.* v. *Eddy* (1887), 23 Ill. App. 352. In this case appellant is sued as a wrongdoer, and the title is in issue only indirectly as affecting the measure of damages. In the absence of countervailing proof, the *prima facie* title shown by appellee will stand. The attention of the court has not been called to any evidence to meet the *prima facie* case made by appellee. Appellant attempts to question the title of appellee to a part of the land lying in the fractional northeast quarter of section 36, township 33 north, range 4 west, but no attempt is made to defeat the title of appellee by showing the true state of the record title. The evidence must be held sufficient to sustain appellee's title to the entire farm.

Appellant asserts that there is no evidence to show any permanent injury to the land, and that a verdict based on such theory is not sustained by the evidence.

Appellee does not claim that any part of his land has been appropriated or permanently occupied by appellant so as to deprive him of its use or occupancy. 11. Appellee still has the possession and use of all the land described in his complaint in the condition in which it was left after the water receded, leaving the deposit of oil on its surface. The evidence does not show a condition created by appellant causing a continuous or intermittent flow of oil, which will exist throughout the future, killing the vegetation and rendering the land unproductive so long as the pipe lines are maintained and operated. Appellee does not seek to recover damages on the theory that appellant has wrongfully appropriated to its use a portion of his land for the purpose of flowing oil thereon throughout the future. On such a theory he would be entitled to be awarded damages for a permanent injury to the land, and, by the

payment of the amount awarded, appellant would acquire a right against appellee to use the land so appropriated for that purpose. The wrongful act on which the action is based is not treated as a continuing nuisance, but a completed tortuous act, resulting in permanent injury to the land affected. Under the pleadings and the evidence in this case, the recovery must be limited to damages resulting to the land from the oil which had been permitted to flow thereon prior to the commencement of the action; but the entire damage resulting therefrom must be recovered in one action. *Porter* v. *Midland R. Co., supra; West Leigh Colliery Co.* v. *Tunnicliffe* (1908), 10 Ann. Cas. 74.

It is the theory of appellee, as disclosed by the record, that the effect of the oil which appellant had permitted to flow upon the land had killed the grass and vegetation growing thereon and had so affected said land as to permanently destroy its fertility and productive value. Under such a theory the wrongful act has been completed and all of the damage to flow therefrom has been consummated. The abatement of the condition which might occasion further damage could neither enhance nor diminish the amount of recovery, as, under the theory adopted, damages can be recovered only for the injury already inflicted. It can be readily seen that a recovery for the amount of depreciation in the rental value of the land to the time of the commencement of the action would not compensate appellee for the loss sustained, if it is true that the fertility and productive value of the land were permanently destroyed. Appellant asserts, however, that there is no evidence in the record from which the jury could find that the fertility or productive value of the soil was destroyed. In the opinion of the court, appellant is correct in this statement. The evidence in the case is so voluminous that it is impracticable, within

the scope of this opinion, to review it at length. It is shown that great quantities of oil found its way upon the land and was left there after the water receded. Evidence was introduced showing that samples of soil furnished by appellee were analyzed and that as much as 7½ ounces of crude oil to the cubic foot were found, while in other samples taken from the land no oil was found. There is evidence to show that crude oil has a harmful effect on certain things and that it will kill vegetation, but none to show that it would affect the fertility or the productive value of the soil itself. It is shown that, after the flood, portions of the land did not produce the native grass that had grown there prior to that time, and that the surface in places was bare of vegetation, while in other places the ground was covered with weeds. This might justify the inference that the oil killed the grass and destroyed the sod and roots, especially if the failure of the grass to grow was confined to the places most affected by the oil, but it would not justify an inference that the soil had lost its fertility or productive value. There is also evidence by Mr. Helmer and Mr. Kottka as to oil on the Bunge farm on which these gentlemen had resided. This evidence shows that a flow of oil on portions of those lands had destroyed the native grasses and parts of a timothy meadow. This evidence shows that there is a place in the pasture where the grass had been killed out by oil about eleven years before the trial, and that practically nothing had grown on that place since, but it does not show that there had been any attempt to reseed it to grass or to cultivate it in any other kind of crop.

Appellee testified that he plowed up a part of one forty-acre tract that had been overflowed by oil, and that, in 1916, he sowed a part in oats, a part in millet, a part he planted in corn. He testified that he got one wagon load of bundles of oats out of a field of twenty

acres, that there was no corn crop at all, and that fifteen acres of millet produced only one wagon load. He stated that the land had produced before that, and gave some figures as to the crops in the years 1914 and 1915; but there was no evidence to show whether the failure of the crops in the year 1916 on the particular fields to which he referred was due to a condition of the soil produced by the flow of oil, or whether it was due to some other cause. The attention of the court has not been called to any other evidence showing an effort to produce crops on any of the land affected. There is no evidence to show that it would not produce grass, if properly seeded, or that it would not, under favorable conditions, produce other crops. The evidence most favorable to appellee is not sufficient to warrant a finding that the productive quality of the soil was destroyed or permanently injured from the effects of the oil.

As heretofore stated there is evidence to show an injury to the products of the soil, and also to show that appellee's stock pasturing on his lands was injured, and that some of it was killed as a result of oil swallowed in eating grass and drinking water on the land. Under the evidence, appellee was entitled to a verdict for these items of evidence.

When the amount of the verdict is considered in connection with the evidence in relation to the items of damages for which appellee is entitled to recover, 13. it seems apparent that the jury must have awarded damages on account of permanent injury to the productive qualities of the soil. In testifying to the market value of the land before the oil flowed over it, and of the same land immediately afterward, the witnesses must have based their testimony on the assumption that the fertility of the soil was destroyed, and that the land would remain in that condition for an indefinite period; and the jury must have

based the damages as awarded by its verdict on the depreciation in the market value of the land as shown by such evidence. Where it appears from a record that a verdict is based on improper items of damages, the verdict will be held to be excessive, and a new trial will be awarded. *Cleveland, etc., R. Co.* v. *Hadley* (1907), 170 Ind. 204, 82 N. E. 1025, 84 N. E. 13, 16 L. R. A. (N. S.) 527, 16 Ann. Cas. 1; *City of Indianapolis* v. *Stokes* (1914), 182 Ind. 31, 105 N. E. 477; *Board, etc.* v. *Fertich* (1897), 18 Ind. App. 1, 46 N. E. 699. The same rule must be applied where the verdict appears to be based on an item of damage which has no evidence to sustain it. For the reasons stated, appellant's motion for a new trial should have been sustained.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 123 N. E. 789. Damages caused by refineries, gas wells or leaks, 107 Am. St. 245. See under (1) 23 Cyc 1186, 29 Cyc 1254; (3) 1 C. J. 1119; (4) 17 C. J. 884, 38 Cyc 1126; (5) 38 Cyc 1072; (8) 1 C. J. 1004.