## IN RE SAVAGE ASSIGNMENT: UNIVERSAL CREDIT COMPANY, INC., v. TALCOTT, JR., ASSIGNEE.

[No. 26,909. Filed January 11, 1938. Rehearing waived January 19, 1938.]

*Call & Call,* for appellants.

*Arnold & Degnan, Thad M. Talcott, Jr.,* and *Harry Brownstein,* for appellees.

TREMAIN, J.—Appellee filed a verified information in a civil proceeding then pending in the Saint Joseph Circuit Court, praying that Universal Credit Company, Inc., appellant, G. F. Alcott, and J. Carl Weldy be adjudged guilty of contempt of court.

The information in substance recited that Thad M. Talcott, Jr., was the duly qualified trustee of Schuyler L. Savage under the voluntary assignment laws of the state of Indiana; that, among other articles of property, said Savage was the owner of a Ford Motor Truck, purchased by him in 1936 from the Eby Auto Sales Company upon a conditional sales contract on which there was a balance due in the sum of $207; that the Universal Credit Company, by its officers, claimed title to said truck as assignee of the contract; that Alcott, as manager of the company, demanded payment of the balance due on the truck; that the trustee replied that he was acting under the jurisdiction of the Saint Joseph Circuit Court; that as soon as assets were sold and funds obtained, the balance of $207, due on the truck, would be paid; that on March 16, 1937, the trustee addressed a letter to the Universal Credit Company ad-

vising that he would pay the balance; that on the following day, March 17, Alcott, a representative of the Universal Credit Company, and one Weldy called upon Savage, who was acting as the trustee's agent, and stated that they had interviewed the trustee, and he had sent them there to purchase the truck; that they desired to examine the same before purchasing it and asked permission to drive it around the block; that permission was granted "under the representations that they had made and they failed to return it."

It is alleged that the trustee made immediate demand for its return and reported the matter to the court. Upon notice Alcott appeared and advised the court that he would consult an attorney as to his rights in the matter. An attorney advised the trustee that the truck would be returned upon the payment of $207. Later the attorney stated that the Universal Credit Company claimed that it had a right to repossession of the truck, and refused to return it to the trustee.

The petition alleged that the trustee had an equity in the truck of $250 or $300, which equity was part of the assets of the estate; that the Saint Joseph Circuit Court had jurisdiction over said property; that the property was in the custody of the court; that the Universal Credit Company, through its representatives, Alcott and Weldy, by false representations, without right, secured possession of the truck and refused to return it; that the trustee "has been ready and willing to pay the balance due on said truck."

The petitioner asked that the defendants be required to appear and show cause why the truck should not be returned to the trustee, or be adjudged guilty of contempt.

Upon said verified petition the court issued a rule against the defendants to show cause as to why they should not be punished for contempt. For the purpose

of purging themselves, the defendants filed a verified return to the petition, the first paragraph of which was a general denial to "each.and every material allegation contained in said rule and in the affidavit on which said rule was issued."

The second paragraph of the return alleged that the Universal Credit Company was engaged in the financing business; that Alcott was its local manager and Weldy was a temporary employee; that April 23, 1936, Savage purchased the motor truck from the Eby Auto Sales Company upon a conditional sales contract, providing for the payment of a balance of $498.36 in twelve monthly installments; that the contract expressly provided that the title to the truck should not pass to the purchaser, but should remain in the seller or its assignee until all sums due thereunder were fully paid; that time was of the essence of the contract, and upon default in payment, proceedings in bankruptcy, receivership, or insolvency, the seller or its assignee would then forthwith be entitled to take immediate possession of the truck; that on the day of sale, the contract was sold by the Eby Auto Sales Company to the Universal Credit Company; that Savage was notified, and thereafter made payment directly to the Universal Credit Company.

It is further alleged: "That said specific motor vehicles (A second car was involved in the trade), as these respondents are informed and verily believe, were not listed among the assets of said Schuyler L. Savage in his assignment for the benefit of creditors in this action, and that Universal Credit Company, Inc., was not therein listed as a creditor"; that default was made by Savage in the payment of his contract December 25, 1936, at which time there was due the sum of $207.65, and no payments were made thereafter; that the default in the payment occurred prior to the assignment made by

Savage for the benefit of creditors; that under the terms of the contract of sale by the Eby Auto Sales Company to the Universal Credit Company, the Eby Auto Sales Company guaranteed the payment in full, but in the event of a default in payment by the purchaser of the truck, the Eby Auto Sales Company would be released from said guarantee unless the Universal Credit Company repossessed the motor vehicle within ninety days after such default; that under said contract it became necessary for the Universal Credit Company to repossess the motor vehicle or suffer the loss of the guarantee; that through its agents, a demand was made on Savage "for possession of said motor vehicles and accordingly repossessed same"; that Weldy drove and stored the truck and had no other connection with the transaction; that the respondents and each of them did not by their respective acts, in any manner, intend to do anything whatsoever in contempt of the court or its orders, and the respondents at the time of their said acts believed and still believe that their said acts were proper and lawful. There was a prayer that they be discharged. The answer was verified by both Alcott and Weldy.

The cause was submitted to the court for trial on the day the verified answer was filed. The sole and only evidence introduced before the court was the verified return. Upon that evidence the court discharged Alcott and Weldy, but found the Universal Credit Company guilty of contempt, and fined it in the sum of $200 for the use and benefit of the assignee.

The Universal Credit Company filed a motion in arrest of judgment, based upon the ground that the Saint Joseph Circuit Court had no jurisdiction over the subject-matter, for the reason that Section 3-811 Burns' Ind. St. 1933 (§879 Baldwin's 1934), provides that the court before which the alleged contempt may be committed, at the time the rule to show

cause is issued, shall nominate three competent and disinterested persons, each of whom shall be available as a judge to hear the cause. It is admitted by all parties to this appeal that the proceeding charges, or attempts to charge, a civil indirect contempt, filed in a civil case out of which it arises.

*Denny* v. *State* (1932), 203 Ind. 682, 182 N. E. 313, in a well considered opinion, analyzes the different proceedings in both civil and criminal contempt cases. While it did not directly discuss the point herein presented, it did cause it to clearly appear that the provision of the statute just referred to applied to criminal contempt only. It was so held in the case of *Bangs* v. *Northern Indiana Power Co.* (1937), 211 Ind. 628, 6 N. E. (2d) 563. The motion for arrest of judgment was properly overruled.

The final question depends on the sufficiency of the evidence to warrant the judgment of the court. Even if the court should consider the verified information together with the verified return, a situation is presented wherein the appellant is the holder of a conditional sales contract which reserved title in the seller; default was made in the monthly payments long before the assignment was executed for the benefit of creditors; upon default, the seller or its assignee possessed the legal right to repossess the truck at once; Savage never owned the title to the truck; the equity was all he owned and could transfer to his assignee. The verified information recites that when notice was served upon the appellant to appear in court and show cause why he should not be punished for contempt, he immediately appeared and advised the court that he would consult an attorney as to his rights; that he did consult an attorney, who at once advised the trustee that the truck would be delivered to him upon the payment of the balance due—$207. There is no allegation or proof in any form that the assignee paid or tendered

the balance due on the truck. All he did was to express a willingness to pay the balance. The verified application does not specifically allege that the truck came into the possession of the assignee, but alleges it was owned by the assignor. The verified return specifically denied that the possession of the truck passed to the assignee; that it was listed among the assets of the assignor. Nor was the appellant listed as a creditor. The appellant alleged facts showing the necessity of its prompt action in repossessing the truck in order to hold the sales company as a guarantor of the contract.

The appellee was bound to establish by proof the allegations contained in his verified application. This is especially true under the issue formed in this case. The verified return of appellant, when introduced in evidence was sufficient to cast the burden upon appellee to produce facts to establish the contemptuous conduct of appellant, if he had such facts within his control. He brought the appellant into court, and, under the issue, was compelled to sustain the charges by proper proof, or fail. *Whittem* v. *State* (1871), 36 Ind. 196; *Kneisel* v. *Ursus Motor Co.* (1926), 323 Ill. 452, 154 N. E. 195.

No order was made by the court, or ever had been made, directing appellant to deliver the truck to the assignee. Therefore, appellant is not guilty of violating a court order. It repossessed a truck of which it was the legal owner. Had an order been made to return the truck to the assignee, and, thereafter appellant refused to obey the order, a different question would be presented.

Under the facts in this case the conviction of the appellant of indirect contempt of the court is not sustained by legal evidence, and is contrary to law. *Blankenbaker* v. *State* (1929), 201 Ind. 142, 158, 166 N. E. 265.

Judgment reversed, with instructions to sustain the motion for a new trial.