CHADWICK *v.* ALLESHOUSE.

[No. 30,839. Filed January 22, 1968. Rehearing denied May 2, 1968.]

*Winslow Van Horne* and *Van Horne & Van Horne,* of counsel, of Auburn, for appellants.

*Gerald Deller, Albert M. Friend,* and *Deller, Dygert & Friend,* of counsel, for appellees.

MOTE, J.—This is an appeal from a judgment of the Steuben Circuit Court adjudging the Appellants in contempt of court for the alleged violation of a permanent injunction issued on May 7, 1962, in another action as a final judgment, as follows:

"It is, therefore, considered, adjudged and decreed by the Court that the defendants, and each of them, and their heirs, assigns, agents, employees or successors in interest be and they are hereby perpetually enjoined from operating or permitting the operation upon the premises now owned and/or occupied by said defendants, or either of them of any races, test runs or time trials by automobiles, motor vehicles, race cars or other combustion power propelled vehicles and from the use or employment in connection with said activities of spot lights, loud speakers or public address installations or systems."

The judgment, as corrected on June 11, 1965, was entered after a trial of the issues joined by Appellees' Petition for a

Rule to Show Cause why Appellants should not be punished for violation of the permanent injunction issued on May 7, 1962. The said Petition was filed in court on July 22, 1964, and contained specifications of alleged violation from (a) to (g), both inclusive.

At the conclusion of the trial without a jury, the court made a finding for the petitioners (Appellees) and against Appellants, entering the judgment from which this appeal is taken, which judgment was as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the court that the defendant Edna K. Chadwick is not guilty of contempt of court and that the plaintiffs take nothing by this affidavit and petition against her. The Court now finds for the defendant Mary Lou Birchfield and against the plaintiffs upon the affidavit and petition as to her.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the plaintiffs take nothing by their affidavit and petition and that the defendant Mary Lou Birchfield is not guilty of contempt of this court.

The Court further finds for the plaintiffs and against the defendant Clifton W. Chadwick upon the affidavit and petition and that the defendant Clifton W. Chadwick is guilty of contempt of the order of this court.

IT IS FURTHER ORDERED BY THE COURT that the defendant Clifton W. Chadwick is guilty of contempt of this court and that the said Clifton W. Chadwick pay the sum of $500.00 to the plaintiffs Herbert Alleshouse and Roberta Alleshouse, and an additional sum of $500.00 to the plaintiffs Robert Ferris and Betty Ferris, and an additional sum of $500.00 to the plaintiffs Galon P. Noll and Beatrice J. Noll, and an additional sum of $150.00 to plaintiffs' attorneys herein for preparation and trial of this suit, and it is further ordered that the defendant Clifton W. Chadwick be committed by the Sheriff of Steuben County to the county jail until such sums are paid or replevied.

IT IS FURTHER ORDERED BY THE COURT that the defendant James W. Birchfield is guilty of contempt of this court and that the said James W. Birchfield pay the sum of $500.00 to the plaintiffs Herbert Alleshouse and Roberta Alleshouse and an additional sum of $500.00 to

the plaintiffs Robert Ferris and Betty Ferris, and an additional sum of $500.00 to the plaintiffs Galon P. Noll and Beatrice J. Noll, and an additional sum of $150.00 to plaintiffs' attorneys herein for preparation and trial of this suit, and it is further ordered that the defendant James W. Birchfield be committed by the Sheriff of Steuben County, Indiana, to the county jail until such sums are paid or replevied."

A Motion for New Trial was filed and overruled; this appeal results.

The Assignment of Errors, seasonably filed in this Court, asserts that the trial court erred in overruling the Appellants' Motion for a New Trial.

In their argument, Appellants advance three contentions of error based upon overruling of their Motion for a New Trial. We shall attempt to discuss the merits of their contentions in the order of presentation.

Appellants first assert that "absent any proof of any legally compensable injury, it was error for the court to award damages to the appellees," attempting to apply said assertion to all four of the specifications for new trial: (1) the decision . . . is not sustained by sufficient evidence; (2) the decision . . . is contrary to law; (3) the damages assessed . . . are excessive; and (4) error in the assessment of the amount of recovery, in this, the amount is too large.

Appellants contend that the proceeding, being for indirect civil contempt, the damages to be assessed, if any, must be of a compensatory and not of a punitive nature; that compensatory damages must be proved; and that the testimony presented as to the difference in value of the property of Appellees, if the races were to continue, and not the diminution of values before and after one race. They further contend that where a nuisance is abatable, as here, the damages assessed must be limited to the rental value of the properties. To sustain the various contentions next above set forth, Appellants cite the following authorities: *Ex Parte Fennig, Ex Parte Whipple* (1939) 216 Ind. 298, 23 N. E. 2d 678; *Brown* v. *Brown* (1933) 205 Ind. 664, 187 N. E. 836; *Denny* v. *State*

(1932) 203 Ind. 682, 698, 182 N. E. 313; *Moore* v. *Polk Sanitary Milk Co.* (1936) 209 Ind. 558, 200 N. E. 228; *N. Y. C. & St. L. R. R. Co.* v. *Meek* (1936) 210 Ind. 322, 1 N. E. 2d 611; *In re Savage Credit Co.* v. *Talcott* (1938) 213 Ind. 228, 234, 12 N. E. 2d 141; *Indiana Pipe Line Co.* v. *Christensen* (1919) 188 Ind. 400, 123 N. E. 789; *Chicago, etc., R. Co.* v. *Myers* (1914) 57 Ind. App. 458, 105 N. E. 645; *Board* v. *Usrey* (1943) 221 Ind. 197, 46 N. E. 2d 823; *Pittsburgh, etc., R. Co.* v. *Lamm* (1916) 61 Ind. App. 389, 112 N. E. 45; *Perry, etc., Stone Co.* v. *Smith* (1908) 42 Ind. App. 413, 85 N. E. 784.

The authorities cited next above may be said generally to establish that this proceeding is one of indirect civil contempt; that the parties are properly named; that the ■■■ damages to be assessed shall be compensatory of damages, if any, to appellees; and that the burden of proof rests upon Appellees.

The nuisance matter was settled in the action which resulted in the issuance of a permanent injunction; hence, the present proceeding was not designed to abate a nuisance. On the other hand, the action or proceeding was to "enforce its order (injunction) 'by attachment or otherwise, according to the exigency of the case' . . . which is properly not a power to punish, but one to coerce by imprisonment or to impose money penalties for the benefit of the injured party or to 'take all necessary measures to secure and indemnify the plaintiff against damages in the premises.' " *Denny* v. *State*, *supra*. In that case, this Court further said in 203 Ind. at p. 706, 182 N. E. at p. 321:

"... we think it advisable to state definitely our conclusions, insofar as required by this appeal, respecting the rules applicable to criminal and civil contempts arising out of disobedience of orders of injunction. Our conclusions are as follows:

(1) That the facts in an information charging a criminal contempt of court, must be verified by the oath of the informant and upon his personal responsibility.

(2) That the information for a criminal contempt should be entitled 'State of Indiana vs. the defendant' and

filed as an independent action and prosecuted by the State.

(3) That a proceeding for a civil contempt should be filed in the civil case out of which it arises; that the pleading upon which the proceeding rests may be merely a motion or petition by the complainant.

(4) That such pleading must be sworn to by the complainant on his personal knowledge or supported by the affidavit of someone who has personal knowledge of the facts set out in the pleading.

(5) That to constitute a criminal contempt the acts of disobedience must be characterized by a deliberate intention to defy the authority of the court, while an actual intent to do an act which violates the terms of a court order is sufficient to constitute a civil contempt.

(6) That in a civil contempt proceeding the only proper object is the enforcement or protection of the rights of the complainant and only coercive or remedial measures can be employed by the court; that imprisonment for a term or a fine not for the benefit of the complainant must be considered punitive and properly imposed only in a criminal contempt proceeding.

(7) That even though a single act of disobedience of an order of injunction may constitute both a criminal and civil contempt a proceeding in contempt for enforcement of civil rights and remedies is legally as independent of a criminal proceedings as a civil action for assault and battery is independent of a criminal prosecution based upon the same facts.

(8) That the intent of the alleged contemnor distinguishes a criminal contempt from a mere violation of an order of injunction; and, consequently, criminal and civil contempts cannot be distinguished by the test of whether the conduct of the defendant consists in refusing to do an act required by the order of the court or in doing an act prohibited by the order of the court, since one may as flagrantly defy the authority of a court by refusing to do an act enjoined, as by doing an act forbidden by an order of the court.

(9) That in a criminal contempt proceedings the defendant is entitled to a discharge upon his verified answer, if the answer, considered with the information, is sufficient to show lack of intent to defy the authority of the court; while in a civil contempt proceeding the

answer need not be verified and both parties are entitled to introduce evidence."

*Gompers* v. *Buck's Stove & Range Co.* (1910) 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 LRA NS 874; *Bessette* v. *W. B. Conkey Co.* (1903) 194 U. S. 324, 24 S. Ct. 665, 48 L. Ed. 997.

Thus it follows, we think that this action is of a civil nature and that Appellees have proceeded correctly, which brings us to an examination of the record to ascertain whether there is affirmative, substantial proof, and evidence of probative value or legitimate inferences therefrom which support a judgment for damages.

It is sufficient, we believe, to remark that the specifications of Appellees' Petition for an Order to Show Cause were amply supported by the evidence. In fact, there is little, if any, dispute about the proof of the facts alleged in each specification. The Petition recited that "on Friday evening of July 10, 1964, commencing at the hour of 5:30 on said day and until the hour of 12:15 A.M. on the 11th day of July, 1964, Appellants did and performed the following acts, deeds, commissions in violation of said injunction as follows:

'(a) Operated and permitted to be operated a race and races.

(b) Operated and permitted to be operated test run and test runs, time trial and time trials by automobiles and by motor vehicles and by race cars and by other combustion power propelled vehicles.

(c) That they turned on and operated or permitted to be operated spotlight and spotlights.

(d) That they operated and permitted to be operated floodlight and floodlights.

(e) That they operated and permitted to be operated loudspeaker and loudspeakers, public address installation and system and public address installations and systems.

(f) That they operated and permitted to be operated racing operations and related activities as charging patrons, selling food and beverages.

(g) That they operated and permitted to be operated the aforementioned items creating a great amount of hustle, bustle, din, uproar, babble, hubbub and loud snarling of motors and other earsplitting noises.' "

We also point to the fact that there was testimony introduced at the trial, without objection or dispute, that upon each Friday evening thereafter, to and including the Friday evening before the trial, the operations of the track continued under approximately the conditions described. Whether the trial judge considered this in determining the amount of the money judgment is not known, inasmuch as there was no special finding of facts or conclusion of law; they were not requested.

Without detailing the evidence; without ascribing any particular inducing effect the testimony may have had upon the trial court; and also without comment upon what witnesses the court may have believed or disbelieved or the plausibility of the testimony as it came from the witnesses, the entire chronicle of events, as recorded and placed before the court, furnished a broad, contemplative spectrum of justiciable, ultimate, issuable facts for settlement and determination by the trial court, which alone is responsible for the solution. Moreover, that determination or decision may be considered as final in all respects where, as here, it may readily be said that it was supported by substantial evidence of probative value.

The money judgment in the sum total of Three Thousand ($3,000.00) Dollars, or One Thousand ($1,000.00) Dollars for each of the Appellees, with Three Hundred ($300.00) Dollars attorneys' fees, could be considered rather minimal in view of the commotion, noise, frustration, glaring lights, strident horn tooting, loudspeakers, motor combustion, explosions and fumes, dust in the air, permeating the premises and Appellees' homes, etc., caused and permitted by Appellants, in violation of the injunction theretofore issued against them and for which Appellees doubtless incurred

goodly expenses to secure the writ which we think may not be specifically included as damages in this proceeding, although we are presented with ostensibly flagrant violations upon the rights of citizens to be secure in their homes and without the operation on abutting property located on the countryside, particularly of a nuisance already enjoined.

We find but few helpful authorities in our jurisdiction or others on the question of the amount of damages in situations similar to the case now on appeal. Appellees presented testimony as to the value of their properties, which were affected by the operation of the automobile race track, before installation and operation of the track, and the value thereafter. The differences were very substantial and as much as fifty (50%) per cent. Appellees also assert that injured sensibilities, which naturally obtain with the interruption of one's habits and the right to enjoy peace, quiet and serenity within his "castle"—his alone—are matters of concern when determining the damages. Appellants urge that if Appellees are entitled to recovery, it must be limited to the fair rental value of their properties for the one evening of Friday, July 10, 1964.

We are unable to agree with Appellants' contentions. We do, however, recognize the difficulty encountered in the establishment of precise damages, particularly in cases of the character now before us.

*Denny* v. *State, supra; State ex rel. McMinn* v. *Gentry* (1951) 229 Ind. 615, 100 N. E. 2d 676, and *Duemling* v. *Fort Wayne Community Concerts, Inc.* (1963) 243 Ind. 521, 188 N. E. 2d 274, have been cited as authorities which sustain the judgment now on appeal. Actually, we think, perhaps that they do, only because of what we regard herein as of a minimal amount under all the circumstances and nature of the case, but certainly we find no broad pattern of guidelines.

By commitment of Appellants to the custody of the Sheriff until the sums fixed in the judgment "are paid or replevied"

for the benefit of Appellees and their attorneys, the court followed the settled rule in this and other jurisdictions, which is:

"The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial, and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in Re Nevitt, 54 C.C.A. 622, 117 Fed. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he previously refused to do." *Gompers* v. *Buck's Stove & Range Co., supra,* 55 L. Ed. at page 806.

It seems fair to conclude that the amount to be assessed against defendants found to be in violation of the chancellor's domain must be predicated somewhat upon the practicality of the amount which, together with an order of commitment in lieu of payment of the assessment, will have the necessary deterrence.

We do not consider *Moore* v. *Polk Sanitary Milk Co., supra,* to be similar to the case at bar. Here, there were allegations of damages in the petition and evidence to support the same.

In *Trotcky* v. *Van Sickle* (1949) 227 Ind. 441, 85 N. E. 2d 638, the judgment was in the amount of One thousand seven hundred fifty ($1,750.00) Dollars for the plaintiffs, which sum was found to be the reasonable value of the service rendered by attorneys who prosecuted the action. This appears to be the result of a second action involving the same parties and a preceding violation. In the first of said actions, plaintiffs were awarded Three hundred fifty ($350.00) Dollars without mentioning attorneys' fees. This Court said therein that:

"The record here discloses continued contumacy by the appellant. This is the second proceedings for violation of the same injunction. The trial court found he intentionally did the acts which were in violation of the injunction. The record does not disclose any abuse of discretion by the trial court, . . .".

We adopt the same reasoning and logic to determine that the amount of damages assessed was not excessive or too large. Furthermore, the amount of the award is not shocking, nor does it appear to result from bias or prejudice. On the other hand, we reach the opinion that in view of the present economy, the necessary labor, toil, worry and fretting which apparently accompanied the action and proceedings over a protracted period of time and the boldness which the trial court may or could have found to exist on the part of Appellants in the infringement of the property and personal rights of three different families, we find no error in the amount of the judgment.

We will discuss together Appellants' second and third contentions, namely, as they say, that neither of the Appellants Chadwick or Birchfield was guilty of contempt of court and that the decision is not sustained by sufficient evidence, again relying upon specifications 1 and 2 of the Motion for New Trial, as set forth above.

There was sharp conflict in the evidence. Appellants made an attempt to disassociate themselves from the racetrack operation which began on July 10, 1964, after substantial preparation therefor. The record indicates that Appellant Chadwick, who owned the real estate upon which the original track was established and then reconditioned and set in order prior to its reopening, had leased the same to Tri-State Motor Speedway, Inc., of which Chadwick was Treasurer and his Co-appellant was President. Chadwick testified that on April 15, 1964, he conveyed the real estate by quit-claim deed to one Ross, who was identified as Clarence Ross, a brother-in-law of Co-appellant James Birchfield, Rural Route, Coldwater, Michigan. The alleged consideration for the conveyance was $35,000.00, with $500.00 in cash and a purchase money note and mortgage for the balance of $34,500.00. Other than having seen Ross a few times, apart from the day the instruments regarding the sale were executed in Chadwick's office at Pleasant Lake, Indiana, the latter did not know very much about

Ross and he could not describe his physical appearance. If the record discloses that Ross was at the trial, we did not discover it. Gravel from the premises allegedly was sold after the date of the above conveyance and the money therefor was paid to Chadwick.

The record reveals that both Appellants were about the racetrack premises just prior to its reopening on July 10, 1964; that Birchfield paid one Stroh for hauling gravel for getting the track ready for reopening. Birchfield "flagged" races and did a number of other things and it appears Chadwick may have had more knowledge of affairs and events concerning the operation of the track and the use of the property connected with the track than he cared to admit. We consider the factual situation here involved, as disclosed by the record, to be sufficiently reasonable to warrant the decision of the trial court.

The judgment is affirmed.

Lewis, C. J., Arterburn and Jackson, JJ., concur; Hunter, J., dissents without opinion.

NOTE.—Reported in 233 N. E. 2d 162.